## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **B.W.,** | : | |
| | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:19-1146** |
| | : | |
| **v** | : | **(JUDGE MANNION)** |
| **CAREER TECHNOLOGY CENTER OF LACKAWANNA COUNTY and VALLEY VIEW SCHOOL DISTRICT,** | : | |
| | : | |
| **Defendants** | | |

=    =    =    =    =    =    =    =    =    =    =    =    =

| | | |
|---|---|---|
| **R.P.,** | : | |
| | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:19-1147** |
| | : | |
| **v** | : | **(JUDGE MANNION)** |
| **CAREER TECHNOLOGY CENTER OF LACKAWANNA COUNTY and VALLEY VIEW SCHOOL DISTRICT,** | : | |
| | : | |
| **Defendants** | | |

=    =    =    =    =    =    =    =    =    =    =    =    =

| | | |
|---|---|---|
| **M.W. and T.W., as parents and natural guardians of M.W.,** | : | |
| | : | |
| **Plaintiffs** | : | **CIVIL ACTION NO. 3:19-1148** |
| | : | |
| **v** | : | **(JUDGE MANNION)** |
| **CAREER TECHNOLOGY CENTER OF LACKAWANNA COUNTY and LAKELAND SCHOOL DISTRICT,** | : | |
| | : | |
| **Defendants** | | |

= = = = = = = = = = = = =
J.K.,                          :

                               :
        Plaintiff              CIVIL ACTION NO. 3:19-1149
                               :
        v
                               :        (JUDGE MANNION)
CAREER TECHNOLOGY CENTER
OF LACKAWANNA COUNTY and       :
MID VALLEY SCHOOL DISTRICT,
                               :
        Defendants

= = = = = = = = = = = = =

J.R., a minor, by his parents and    :
natural guardians, S.M. & J.R.,
                                     :
        Plaintiffs              CIVIL ACTION NO. 3:19-1150
                                     :
        v
                                     :    (JUDGE MANNION)
CAREER TECHNOLOGY CENTER
OF LACKAWANNA COUNTY and             :
LAKELAND SCHOOL DISTRICT,
                                     :
        Defendants

= = = = = = = = = = = = =

R.P. a minor, by his parent and      :
natural guardian, D.P.,
                                     :
        Plaintiff               CIVIL ACTION NO. 3:19-1153
                                     :
        v
                                     :    (JUDGE MANNION)
CAREER TECHNOLOGY CENTER
OF LACKAWANNA COUNTY and             :
SCRANTON SCHOOL DISTRICT,
                                     :
        Defendants

2

= = = = = = = = = = = = =

| | |
|---|---|
| M.W. as parent and natural guardian of S.W., a minor, | : |
| | : |
| Plaintiffs | CIVIL ACTION NO. 3:19-1154 |
| | : |
| v | : |
| | : (JUDGE MANNION) |
| CAREER TECHNOLOGY CENTER OF LACKAWANNA COUNTY and LAKELAND SCHOOL DISTRICT, | : |
| | : |
| Defendants | |

= = = = = = = = = = = = =

| | |
|---|---|
| E.P., | : |
| | : |
| Plaintiff | CIVIL ACTION NO. 3:19-1155 |
| | : |
| v | : |
| | : (JUDGE MANNION) |
| CAREER TECHNOLOGY CENTER OF LACKAWANNA COUNTY and LAKELAND SCHOOL DISTRICT, | : |
| | : |
| Defendants | |

## M E M O R A N D U M

This Memorandum involves eight substantially similar cases currently before this court arising out of alleged pervasive sexual abuse and harassment of minor male public school students, from four school districts, by one of their teachers while they were taking classes at the County Career

Technology Center.[1] Pending before the court in the eight cases are the following 14 motions: (1) eight motions to dismiss the plaintiffs' complaints on behalf of defendant Career Technology Center of Lackawanna County ("CTC"); and (2) six motions to dismiss the plaintiffs' complaints on behalf of the defendant School Districts. All of the motions are filed pursuant to Fed.R.Civ.P. 12(b)(6). Plaintiffs, parents and natural guardians of the male minor students, allege that while their sons were students in the respective school districts, they were enrolled in the automotive technology program at CTC, and were sexually assaulted and abused by a teacher.[2] In each of the complaints, plaintiffs raise six claims, three claims allege violations under Title IX of the Educational Amendments of 1972, 20 U.S.C. §1681, *et seq.* (hereinafter "Title IX"), and three claims alleging violations of the students' constitutional rights under the Fourteenth Amendment brought pursuant to 42 U.S.C. §1983. Based on the following, defendants' motions will be **GRANTED IN PART** and **DENIED IN PART**.

---

[1]The related eight cases are Civil Nos. 19-1146, 19-1147, 19-1148, 19-1149, 19-1150, 19-1153, 19-1154, and 19-1155. The court notes that for purposes of discovery it has consolidated the stated cases. (Doc. 16, Civil No. 19-1154). The four defendant school districts are Valley View, Lakeland, Mid Valley, and Scranton. The court notes that in two of the cases, 19-1146 and 19-1147, CTC and Valley View School Districts jointly filed motions to dismiss since they are represented by the same counsel.

The relevant pending 14 motions in the cases are: Doc. 5, 19-1146; Doc. 4, 19-1147; Docs. 6 & 7, 19-1148; Docs. 5 & 6, 19-1149; Docs. 6 & 7, 19-1150; Docs. 8 & 10, 19-1153; Docs. 5 & 6, 19-1154; and Docs. 5 & 6, 19-1155.

[2]The court notes that it will refer to "plaintiffs" herein as the minor students.

## I.    PROCEDURAL HISTORY

By way of general relevant background for all eight cases, on or about June 17, 2019, plaintiffs filed the instant actions against defendants CTC and the school districts in Lackawanna County Court of Common Pleas. CTC removed these cases to federal court on or about July 8, 2019. On or about July 15, 2019, CTC and the school districts filed their motions to dismiss in each case seeking dismissal of all six claims asserted in the plaintiffs' complaints under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. The motions of CTC and the school districts have been briefed.[3]

## II.    FACTUAL BACKGROUND[4]

---

[3]The court notes that it has allowed the attorneys for the plaintiffs in all of the eight related cases, namely, Civil Nos. 19-1146, 19-1147, 19-1148, 19-1149, 19-1150, 19-1153, 19-1154, and 19-1155, to file combined briefs in opposition to CTC's and the various school districts' motions to dismiss that were filed in their cases. (*See* Docs. 22 & 23, Civil No. 19-1154). As plaintiffs indicate in their combined briefs, each of the complaints they have filed contain substantially similar allegations and the six claims raised in their complaints are the same. In fact, some of the plaintiffs are represented by the same counsel. Thus, the court addresses the motions to dismiss filed by CTC and the school districts jointly in one Memorandum.

[4]All facts are taken from plaintiffs' complaints unless otherwise noted. The facts alleged in plaintiffs' complaints must be accepted as true in considering the defendants' motions to dismiss. *See* Dieffenbach v. Dept. of Revenue, 490 Fed.Appx. 433, 435 (3d Cir. 2012); Evancho v. Evans, 423 F.3d 347, 350 (3d Cir. 2005). As indicated, there are presently eight separate lawsuits filed against CTC and the four school districts basically alleging that minor male students were sexually abused by Humphrey and, that CTC and

(continued...)

During the 2016-2017 school year, the plaintiffs were male minor students enrolled at Lakeland School District, Valley View School District, Mid Valley School District and Scranton School District. They were also enrolled in the automotive technology program at CTC. The plaintiffs' automotive teacher at CTC was Richard Humphrey.

As the school year progressed, Humphrey began making unwanted sexual advances towards several male minor students in his class, including the plaintiffs, and began using vulgar explicit language. Humphrey also constantly engaged in inappropriate and unwanted physical contact with his students, including all eight plaintiffs, and he began groping and rubbing the plaintiffs' genital areas. For example, on May 13, 2017, S.W. got grease on his pants in class and Humphrey groped and rubbed S.W.'s genitals purportedly to help him remove the grease. It is also alleged that Humphrey made contact with the genital areas of students in his class by "ball tapping" them. Additionally, it is alleged that Humphrey offered the students "special privileges" allowing them to come to his class early and stay late, and that he

---

[4](...continued)
the school districts failed to take actions to protect them and prevent the abuse.

Also, since the correct standard of review applicable to a motion to dismiss under Fed.R.Civ.P. 12(b)(6) are stated in the briefs of the parties, the court does not repeat it herein. Suffice to say that dismissal is appropriate only if, accepting all of the facts alleged in the complaints as true, the plaintiffs have failed to plead "enough facts to state a claim to relief that is plausible on its face," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007). The facts alleged must be sufficient to "raise a right to relief above the speculative level." Twombly, 550 U.S. 544, 127 S. Ct. at 1965.

would use this extra time to sexually abuse the students.

The plaintiffs and other minor male students in Humphrey's class reported "to teachers and individuals in authority positions the sexual abuse and assault being perpetrated on them [by Humphrey]." It is further alleged that "the behavior and conduct of Humphrey was open, widespread and known by students, staff and administrators of [CTC]." In fact, one of the other automotive teachers at CTC, Louis Morgantini, told minor students in the class that he saw Humphrey acting inappropriately with them, that the conduct was "not right", and that he would "keep an eye on him." Morgantini also told the students that if Humphrey's conduct continued, he would do something about it and speak to others. Plaintiffs allege that Humphrey's sexually abusive behavior towards them did not stop, and that the students then advised Morgantini of Humphrey's continued improper conduct. As such, plaintiffs allege that Morgantini, based on his duty to report Humphrey's sexually abusive conduct under Pennsylvania law, 23 Pa.C.S.A §6311, "reported the behavior of Humphrey to the administrators of [CTC], but no action was taken by [them]."[5] Plaintiffs further state that "discovery may likely reveal that Humphrey's conduct was also open, widespread and known by staff and administrators of defendant [school districts], including Board

---

[5]Pennsylvania's Child Protective Services Law ("CPSL"), 23 Pa. C.S.A. §6311(a)(4) and (c), provide that "a school employee" is a mandated reporter and "shall make a report of suspected child abuse, ..., if the person has reasonable cause to suspect that a child is a victim of child abuse", and "shall immediately thereafter notify the person in charge of the ..., school."

Members, principals and/or superintendents."

On May 13, 2017, a referral was made to Pennsylvania's statewide child abuse registry reporting Humphrey to the Pennsylvania ChildLine Registry, a statewide database, pursuant to the Pennsylvania Child Protective Services Law, 23 Pa.C.S.A. §6318, *et seq.* ("CPSL").[6] The ChildLine Report concerned Humphrey's inappropriate conduct with his students in his CTC automotive class. Detective Jeffrey Gilroy of the Scranton Police Department ("SPD") then began a criminal investigation into Humphrey.

Soon thereafter, on May 15, 2017, Humphrey was suspended with pay by CTC. Subsequently, Humphrey was forced to resign his teaching position at CTC.

In July and December of 2017, criminal charges were filed against Humphrey in Lackawanna County Court of Common Pleas. Humphrey was subsequently convicted of several counts of indecent assault of his students while he was a teacher at CTC and he was sentenced to prison. *See* Com. of PA v. Riley, Docket Nos. CP-35-CR-0002721-2017, CP-35-CR-0001684-2017, and CP-35-CR-0002721-1564.[7]

---

[6]The child abuse registry, "known as ChildLine, is operated and maintained by the Pennsylvania Department of Public Welfare ("DPW")." Mulholland v. Government County of Berks, Pa.,706 F.3d 227, 231-32 (3d Cir. 2013)

[7]Specifically, on January 25, 2018, Humphrey pled guilty to 11 counts of indecent assault and one count of corruption of minors in the Lackawanna County Court of Common Pleas. Humphrey was sentenced on July 24, 2018, (continued...)

As a result of Humphrey's sexual abuse and harassment of plaintiffs, it is alleged that the lives of the plaintiffs were severely and permanently damaged and their injuries were exacerbated by the failure of CTC and the school districts to investigate Humphrey's misconduct in the class and his "inappropriate/questionable/suspicious behavior", and by defendants' failure to prevent and stop Humphrey's misconduct. It is also alleged that CTC failed to properly investigate Humphrey when he was hired by CTC and that CTC failed to take immediate action against Humphrey when it was made aware of his misconduct. Further, it is alleged that CTC failed to provide a safe and secure environment for the plaintiffs that were students at CTC, and that CTC knew or should have known about Humphrey's misconduct.

With respect to the school districts, plaintiffs allege that "Humphrey's

---

[7](...continued)
in all three criminal cases, to an aggregate of 11 to 33 months' imprisonment and he is currently serving his sentence in Lackawanna County Prison. The County Court also adjudicated Humphrey a Sexually Violent Predator under Pennsylvania law.

The court notes that the Lackawanna County Criminal Dockets for Humphrey can be found at http://ujsportal.pacourts.us. The court can take judicial notice of the Lackawanna County Court Criminal Dockets for purposes of defendants' instant motions as an official state court record and matters of public record. *See* Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007); Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006)(In considering a Rule 12 motion, the court may consider documents "that are attached to or submitted with the complaint, and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.")(citations omitted).

conduct was open, widespread and known by staff and administrators of [defendant school districts], including Board Members, principals and/or superintendents." They also allege as follows:

> Defendant [School Districts] knew or should have known of Richard Humphrey's inappropriate conduct with multiple minor students in the Automotive Technology class including Plaintiff[s] and should have taken some action to end the conduct, yet Defendant [School Districts] w[ere] recklessly and deliberately indifferent to the need to: adequately monitor Richard Humphrey and protect the minor students from sexual misconduct, sexual abuse and/or harassment by their teacher while such minor students were in the care, custody and control of Defendant, CTC; supervise Richard Humphrey; investigate the inappropriate conduct; protect Plaintiff[s], remove and/or suspend Richard Humphrey; and/or train Richard Humphrey and/or [School District] employees on how to maintain/protect/preserve minor students to prevent sexual misconduct, sexual abuse and/or harassment from occurring, including that which occurred to Plaintiff[s].

Plaintiffs further allege that since Humphrey engaged in similar sexual misconduct at his prior place of employment, Toyota of Scranton, defendants "CTC and the [School Districts] knew or should have known of Richard Humphrey's propensity for inappropriate conduct with others before Defendant CTC hired Richard Humphrey to teach minor students, and did nothing in its hiring and investigation of this prospective teacher to protect students like Plaintiff[s] from such propensity and conduct." Additionally, plaintiffs allege that defendants should have had a policy and procedure in place to do proper background checks and investigations of teachers that CTC planned to hire, and that CTC and the school districts should have had policies and procedures to protect students and to investigate inappropriate

conduct between teachers and students.

As relief in the complaints, plaintiffs seek compensatory damages as well as attorneys' fees and costs.

Based upon the factual allegations set forth in the complaints, each plaintiff raises six-counts in which the following claims are raised: Count I, (v. defendants CTC and school districts), Title IX, 20 U.S.C. §1681; Count II, (v. defendants CTC and school districts), Title IX, 20 U.S.C. §1681, post-May 2017; Count III, (v. defendants CTC and school districts), Title IX, 20 U.S.C. §1681, Retaliation; Count IV, (v. defendants CTC and school districts), Civil Rights Violation - 42 U.S.C. §1983; Count V, (v. defendants CTC and school districts), State-Created Danger - 42 U.S.C. §1983; and Count VI, (v. defendants CTC and school districts), Failure to Train and Supervise - 42 U.S.C. §1983.[8]

The court has jurisdiction over these cases pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1343(a) because plaintiffs aver violations of federal law, Title IX, and of their due process rights under the Fourteenth Amendment of the U.S. Constitution. Venue is appropriate in this court since the alleged statutory and constitutional violations occurred in this district and all parties

---

[8]The court notes that plaintiffs claims under §1983 are not precluded by their Title IX claims since "none of Plaintiffs' §1983 claims here is predicated on a violation of Title IX", and "their §1983 claims are constitutional ones: (1) their Monell claims are based on an underlying "constitutional right...to freedom from invasion...of personal security through sexual abuse," and (2) their state-created danger claims are similarly grounded in the Fourteenth Amendment's Due Process Clause." Does v. Southeast Delco School District, 272 F.Supp.3d 656, 666 (E.D.Pa. 2017) (internal citations omitted).

are located here. *See* [28 U.S.C. §1391](#).

III.   **DISCUSSION**

   A.   **Title IX Claims, Counts I-III**

   **1. Count I, Claim Prior to the Childline Report of 05/13/2017**

CTC and the school districts argue that all of plaintiffs' claims against them under Title IX should be dismissed, i.e., in Counts I, II and III of the complaints, for failure to state cognizable causes of action. The school districts also argue that plaintiffs' Title IX claims against them fail since Humphrey was an employee of CTC and they were not involved in the hiring of Humphrey. Thus the school districts state that plaintiffs cannot establish that they employed Humphrey.

Additionally, defendants contend that the Title IX claims must be dismissed because the plaintiffs have failed to allege that any of the appropriate persons at CTC and the school districts who had authority to take corrective action had actual knowledge of Humphrey's abusive conduct towards the plaintiffs before the ChildLine Report of May 13, 2017 and the criminal investigation commenced by the SPD.

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal Financial Assistance...." [20 U.S.C. §1681(a)](#). The United States Supreme Court has held that Title IX encompasses sexual harassment

of a student and is enforceable through an implied private right of action for money damages against the school district. *See* Franklin v. Gwinnett County Pub. Sch., 503 U.S. 60 (1992); Does v. Southeast Delco School District, 272 F.Supp.3d 656, 688 (E.D.Pa. 2017) (Title IX "forbids discrimination at educational institutions on the basis of sex, and allows recovery by victims of physical sexual abuse."). *See also* Douglas v. Brookville Area Sch. Dist., 836 F.Supp.2d 329, 342-43 (W.D.Pa. 2011) ("A teacher engages in a prohibited form of 'discrimination' [under Title IX] when he or she 'sexually harasses and abuses a student.'") (citation omitted).

In order to establish a Title IX claim against a school district for alleged physical sexual abuse of a student by a teacher, the plaintiff must show that: (1) the school district received federal funds; (2) "an appropriate person at the school" (3) "had actual knowledge of facts indicating a substantial danger to students"; and (4) "acted with deliberate indifference to that danger." Does, 272 F.Supp.3d at 688 (citing Bostic v. Smyrna Sch. Dist., 418 F.3d 355, 361 (3d Cir. 2005)). *See also* Davis v. Monroe County Bd. of Educ., 526 U.S. 629, 650 (1999).

As such, to state a claim under Title IX, plaintiff must allege facts showing an "appropriate person" had notice of the abuse. "An 'appropriate person' ... is, at minimum, an official of the recipient entity with authority to take corrective action to end the discrimination." Gebser v. Lago Vista Ind. Sch. Dist., 524 U.S. 274, 277, 290 (1998). A person's job title does not determine if he or she is an "appropriate person." "The authority to supervise

a teacher and to investigate a complaint of misconduct implies the authority to initiate corrective measures such as reporting her findings to her superior or to the appropriate school board." Warren ex rel. Good v. Reading Sch. Dist., 278 F.3d 163, 173 (3d Cir. 2002). Thus, under Title IX, a determination of whether a person is an "appropriate person" is based on the person's actual authority to end the discrimination. Id. at 172. "[A] school principal who is entrusted with the responsibility and authority normally associated with that position will ordinarily be an 'appropriate person' under Title IX." Id. at 171. *See also* Douglas v. Brookville Area Sch. Dist., 836 F.Supp.2d 329, 346 (W.D.Pa. 2011) ("Only an individual with the 'authority to institute corrective measures' can be fairly characterized as an 'appropriate person' under Gebser.") (citation omitted). Examples of an "appropriate person" at a school district include the superintendent, assistant superintendent, principal, and assistant principal, provided they had authority to take corrective action to end the discrimination. Lansberry v. Altoona Area School District, 318 F.Supp.3d 739, 751 (W.D.Pa. 2018).

Additionally, under Gebser, actual knowledge is required for a Title IX claim. "An educational institution has actual knowledge if it knows the underlying facts, indicating sufficiently substantial danger to students, and was therefore aware of the danger." Bostic v. Smyrna Sch. Dist., 418 F.3d 355, 361 (3d Cir. 2005) (internal quotations omitted). *See also* Warren, 278 F.3d at 171 (there must be sufficient evidence to show that "'an appropriate person' had actual knowledge of ... [the] abuse."). Actual notice cannot be

14

based upon a mere possibility." Bostic, 418 F.3d at 361.*See also* Moeck v. Pleasant Valley Sch. Dist., 179 F.Supp.3d 442, 449 (M.D.Pa. 2016) ("the plaintiff must present evidence that she provided actual notice [of the sexual harassment] to an appropriate official at the school" to state a claim under Title IX) (citation omitted).

Further, "an 'appropriate person' must have 'actual knowledge of discrimination in the recipient's programs and fail[ ] adequately to respond.'" Bostic, 418 F.3d at 361 (citing Gebser, 524 U.S. at 290). "[C]onstructive notice or *respondeat superior* principles [are not sufficient] to permit recovery under Title IX." Id. (citing Gebser, 524 U.S. at 285–90). Nor can Title IX liability be based on negligence. Id. (citing Gebser, 524 U.S. at 285). Thus, "Gebser ... established that a recipient intentionally violates Title IX ... where the recipient is deliberately indifferent to known acts of teacher-student discrimination." Id. (quoting Davis, 526 U.S. at 643).

Thus, for liability under Title IX, there must be both actual notice of the sexual harassment or abuse itself, and the school district must then also display deliberate indifference to that sexual harassment. Davis, 526 U.S. at 642 (citing Pennhurst State School and Hospital v. Halderman, 451 U.S. 1,17 (1981)). The school district may also only be liable in damages where their own deliberate indifference to this actual knowledge effectively causes the discrimination. Davis, 526 U.S. at 642-643 (citing Gebsner, 524 U.S. at 291) (Court held that "damages remedy will not lie under Title IX unless an official who at a minimum has authority to address the alleged discrimination and to

15

institute corrective measures on the [school district's] behalf has actual knowledge of discrimination in the [district's] programs and fails adequately to respond.")). This "high standard" seeks to eliminate any risk that the [district] would be liable in damages not for its own official decision but instead for another individual's independent actions. Davis, 526 U.S. at 643 (citing Gebser, 524 U.S., at 290-291).

Ultimately, a school district is required to respond to sexual harassment or abuse in a manner that is not "clearly unreasonable." Davis, 526 U.S. at 648-49 (school districts are "deemed to be 'deliberately indifferent' to acts of [] harassment only where the [district's] response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances."). In order for a response to amount to deliberate indifference to discrimination, there must be "an official decision by the [school district] not to remedy the violation." Gebser, 524 U.S., at 290. *See also* Does v. Southeast Delco School District, 272 F.Supp.3d at 688 ("To show intent, Title IX plaintiffs must show that an appropriate person was personally aware of facts demonstrating a real danger to his or her student body—and that he or she made 'an official decision...not to remedy the violation.'") (citing Davis, 526 U.S. at 642).

In these matters, plaintiffs have clearly alleged that both CTC and the respective school districts received federal funding. The court will therefore focus on the other factors regarding plaintiffs' Title IX claims in Counts I.

Initially, all of the school districts contend that they cannot be held liable under Title IX since plaintiffs fail to allege any facts to show that they

16

separately employed Humphrey. The school districts state that they had a member on the Joint Operating Committee of the CTC, ("CTC-JOC"), as a sending school district. The school districts submitted as an exhibit attached to their reply briefs the July 16, 2015 CTC of Lackawanna County Meeting Minutes, in which the CTC-JOC voted to appoint Humphrey as teacher of the automotive technology class. The school districts state that the exhibit also shows that "CTC is a public entity with a Joint Operating Committee of directors from the school districts sending students to CTC, and an administrative director." Lakeland School District ("LSD") also states that the July 16, 2015 meeting minutes reveal that its director was not present, did not vote, and did not participate in the CTC's hiring of Humphrey. The other school districts state that the JOC meeting minutes show that CTC acted alone in hiring Humphrey and that they did not employ him. Thus, the school districts contend that even though they sent students to CTC, plaintiffs have failed to show that they employed Humphrey. As such, the school districts move to dismiss all of the plaintiffs' Title IX claims arguing that since they did not employ Humphrey, they cannot be held liable for his alleged sexual abuse of students enrolled in their districts.

In their complaints, plaintiffs allege that Humphrey was employed by CTC, and that Humphrey was authorized by CTC and the school districts, as sending school districts, to perform the duties and functions of an automotive teacher. At all relevant times, the complaints allege that Humphrey acted within the scope of his duties as authorized by CTC and the sending school

17

districts. Plaintiffs also allege that CTC operated through the CTC-JOC and that all the defendant districts were included in the JOC. Plaintiffs further allege that CTC hired, employed and supervised Humphrey commencing in July of 2015 through his resignation in June of 2017, and that all of the school districts, including LSD, approved of his hiring. Additionally, plaintiffs allege that during the relevant 2016-2017 school year, Humphrey was "acting within the course and scope of his employment and/or agency with CTC and [the school districts] in his capacity as an Automotive Technology Instructor." Finally, the complaints allege that plaintiffs were students in the respective defendant school districts and were enrolled in the Automotive Technology program at CTC taught by Humphrey. (*See, eg.*, Doc. 1-1, ¶'s 8-13, 19-1154).

Thus, plaintiffs contend that they have sufficiently alleged Humphrey was employed by both CTC and each defendant school district and, that he was authorized to act on their behalf during all relevant times.

The court finds that plaintiffs' allegations suffice to overcome the instant motions to dismiss. Despite the CTC-JOC which purportedly shows that CTC hired Humphrey and that he was CTC's employee, plaintiffs will be permitted discovery regarding their allegations that all of the defendant school districts approved of Humphrey's employment and that the operations of CTC were essentially supervised by the CTC-JOC. Defendant school districts can file a summary judgment motion after discovery, if appropriate, to re-assert their argument that Humphrey was not their employee and that they cannot be held labile for his actions under Title IX.

18

Next, the complaints allege that each of the student plaintiffs was subjected to unwelcome sexually abusive conduct by Humphrey based on their sex as males while enrolled in the defendant school districts and attending CTC. The plaintiffs have stated many detailed and disturbing facts in their complaints to support the allegations of rampant unwanted sexual harassment and abuse by Humphrey towards the male students in his class. For example, plaintiffs have alleged that Humphrey "repeatedly made unwanted sexual advances towards the male students in the class by rubbing their backs and shoulders, putting his arms around them, acting in a creepy and weird fashion, placing his hand on their thighs, groping, caressing and/or slapping their genital areas, and speaking to them in a completely inappropriate, vulgar and sexually suggestive manner." The alleged unwanted sexual advances, harassment and abuse by Humphrey towards the minor male student plaintiffs in his class are sufficient to show that they were subjected to discrimination and a substantial danger on the basis of their sex.

The court now considers whether plaintiffs' complaints have properly alleged that an appropriate person at CTC and the defendant school districts had actual knowledge of the physical sexual abuse and harassment by Humphrey.

The complaints allege that Morgantini, a teacher at CTC who was aware of Humphrey's improper conduct, was a mandatory reporter of sexual abuse under Pennsylvania law, 23 Pa. C.S.A. §6311, and had an affirmative and non-delegable duty to report Humphrey's conduct and to disclose what he had

witnessed and learned from students to proper authorities, including the administrators of CTC, Childline, and the administrators of the defendant school districts. The complaints further allege that the administrators of CTC and the defendant school districts then had a duty to disclose the report of child abuse to ChildLine and, then a duty to cooperate with authorities and the investigation. The complaints also allege that "Morgantini in accordance with his mandatory reporting duty under 23 Pa. C.S.A §6311 did report Mr. Humphrey's behavior to the administrators of [CTC] and [the school districts], but no action was taken." Plaintiffs also essentially allege that they and other students in the automotive class at CTC reported the sexual abuse by Humphrey to "teachers and individuals in authority positions" during the 2016–17 school year, and that these persons failed to take timely action by disciplining or reporting Humphrey.

Alternatively, the complaints allege that if Morgantini did not report Humphrey's misconduct to CTC, Childline, and the school districts, "then it is a direct and foreseeable consequence of [CTC's] and/or [the school districts'] failure to implement and/or enforce adequate policies and procedures regarding mandatory reporting obligations and/or training school employees on how to maintain/protect/preserve minor students to prevent sexual misconduct, sexual abuse and/or sexual harassment and/or comply with their mandatory reporting obligations."

Additionally, the complaints allege that Humphrey's conduct "was overt, widespread, and known by students, staff, and administrators of [CTC]", and

20

that "minor students did report to teachers and individuals in authority positions the sexual abuse and harassment being perpetrated on them, including [plaintiffs], by Mr. Humphrey." It is further alleged that CTC and its administrators "knew or should have known of Mr. Humphrey's inappropriate conduct with multiple minor students in the automotive technology class, including [plaintiffs], and should have taken some type of action to end such conduct and yet [CTC] did not." The complaints then allege that CTC was "reckless and deliberately indifferent to the need to protect [plaintiffs] and other students from the harassment and/or sexual abuse of Mr. Humphrey."

Defendants argue that the allegations in the complaints lack the required specificity to state an actionable Title IX claim against them and that the allegations are "speculative as to whether or not an appropriate person or persons of [CTC and the school districts] had actual knowledge of any inappropriate behavior towards [plaintiffs] or other students at the ... time periods being alleged in Plaintiff[s'] Complaint[s]." Defendants also contend that the complaints fail to plausibly state specific facts that "an appropriate person of [CTC and the school districts] who had authority to take corrective measures had actual knowledge of any specific conduct of Mr. Humphrey as alleged and prior to the Childline report of 05/13/2017 and the investigation by the Scranton Police Department." Defendants state that merely alleging that Morgantini reported Humphrey's misconduct to the administrators at CTC and at the school districts and, that other students reported Humphrey's misconduct to teachers and officials in authority positions is not sufficient to

21

identify the appropriate person and to show that the appropriate person had actual knowledge of the specific misconduct by Humphrey towards plaintiffs and the other students in his class.

Similarly, the school districts argue that plaintiffs have failed to allege that an appropriate person or persons at the districts had actual knowledge of facts indicating a substantial danger to plaintiffs and other students from the districts taking classes at CTC and, failed to allege that an appropriate person in the districts acted with deliberate indifference to that danger.

"To survive a motion to dismiss on a Title IX claim, 'it is true that [a] plaintiff does not need to provide detailed factual support for its allegations ... [but] the plaintiff's allegations must amount to more than mere conclusory allegations.'" Colombo v. Bd. of Educ. for Clifton Sch. Dist., 2017 WL 4882485, at *10 (D.N.J. Oct. 29, 2017) (citation omitted).

"Title IX's exacting culpability requirement, which limits liability to those cases 'where a [school] intentionally violates the statute.'" Does v. Southeast Delco School District, 272 F.Supp.3d at 688 (citing Davis, 526 U.S. at 642).

> To show intent, Title IX plaintiffs must show that an appropriate person was personally aware of facts demonstrating a real danger to his or her student body—and that he or she made "an official decision...not to remedy the violation." Precedent is imprecise about exactly how much an appropriate person must know in order to satisfy the actual knowledge prong of the test. Gebser makes clear that "actual notice requires more than a simple report of inappropriate conduct by a teacher." To prevail, a plaintiff must prove an appropriate person knew of acts sufficiently indicating a danger of future abuse. Bostic further clarifies that the known acts must show more than a mere possibility of abuse. At the same time, because the standard is couched in terms of "danger," it

> necessarily contemplates liability where school officials suspect, but cannot be sure of, abusive conduct.

Id. at 688-89 (internal citations and footnote omitted).

The court finds that the complaints adequately allege actual knowledge by an appropriate person at CTC and the school districts of the substantial danger to minor male students posed by Humphrey's widespread and repetitive sexually abusive conduct during the course of a school year. As plaintiffs explain, they do not contend that Morgantini was the "appropriate person" under Title IX, rather they allege that Morgantini, in accordance with his mandatory reporting duties, "reported what he knew [based on his own observations and from what plaintiffs reported to him] about Humphrey's behavior to the administrators of [CTC and] the Defendant school districts and they took no action in response." No doubt that if an "appropriate person" of CTC and the school districts had actual knowledge of Humphrey's improper conduct, then these defendants are potentially liable under Title IX, "because knowledge attributable to [that person] flows back to the [defendants] by virtue of [the person's] status as an "appropriate person." Id. at 689. Conversely, "if an 'appropriate person' lacked 'actual knowledge' of the sexual harassment, the school district cannot be found to have acted with deliberate indifference." Lansberry, 381 F.Supp. 3d at 751. Plaintiffs must also allege that the "appropriate person" was deliberately indifferent to a danger of which he was aware. Since the defendants did not participate in the sexual abuse and harassment directly, they "cannot be liable unless [their] deliberate

23

indifference 'subjects' the student to harassment", i.e., "a school district's actions or inactions must at a minimum 'cause [a student] to undergo' harassment or 'make [him or her] liable to or vulnerable' to it." S.K. v. North Allegheny School District, 168 F.Supp.3d 786, 801 (W.D.Pa. 2016) (citing Davis, 526 U.S. at 645).

In the instant cases, there are many instances of sexually abuse by Humphrey alleged regarding all of the plaintiffs and as well as other student victims in Humphrey's class, and plaintiffs have sufficiently alleged that an appropriate person at CTC and the school districts had actual knowledge of Humphrey's repetitive misconduct before the ChildLine Report was filed. Plaintiffs have also alleged a plethora of facts showing defendants' inactions and describe how these inactions caused all of the student victims "to undergo harassment or make [them] liable to or vulnerable to it." *See id.*

Also, the deliberate indifference standard "requires that [the court] 'examine the apparent gravity of the risk.'" Does v. Southeast Delco School District, 272 F.Supp.3d at 689 (citation omitted). The complaints allege sufficient facts to show that appropriate persons at CTC and the school districts had actual knowledge of substantial danger to the plaintiffs and other victim students based on the severity of sexual abuse by Humphrey in his class. *See* Bostic, 418 F.3d at 361 (Plaintiff must plead that an appropriate person was aware of underlying facts that actually indicate a substantial danger to its students.). As mentioned, plaintiffs have sufficiently alleged that appropriate persons at CTC and the school districts knew of complaints

regarding Humphrey's misconduct prior to the ChildLine Report and the investigation commenced by SPD and, that defendants had actual knowledge of sexual abuse by Humphrey, so plaintiffs' Title IX claims in Count I seeking to hold these defendants liable based on Humphrey's conduct can proceed.

The court finds that plaintiffs' well-pleaded facts allege the existence of continuous sexual harassment and abuse by Humphrey at CTC towards the plaintiffs and the other male students, and that plaintiffs have pled the essential elements of their Title IX claims in Count I.

Further, the parties will be able to request more information during discovery as to whom Morgantini reported Humphrey's wrongful conduct and whether the persons at CTC and the school districts were appropriate persons.

Therefore, the motions to dismiss of CTC and the school districts with respect to the Title IX claims in Count I of the complaints will be **DENIED**.

### 2. Count II, Title IX Claim Post-May 2017

Plaintiff alleges that on May 13, 2017, a Childline Report was initiated regarding Humphrey's behavior in the automotive technology class at CTC and an investigation was commenced by the SPD. It is then alleged that on May 15, 2017, Humphrey was suspended with pay by CTC, and that Humphrey resigned his employment in June of 2017. Plaintiffs allege that even though defendants had actual knowledge of the abuse and the harm they suffered from Humphrey's conduct after the Childline Report, defendants failed to provide them with the appropriate assistance to remedy the effects

25

of the harm they suffered. Thus, plaintiffs contend that their complaints sufficiently state Title IX claims for the time period after May of 2017.

Defendants argue that after Humphrey's suspension, "it is clear that neither [plaintiff], nor any other students while in school, had any contact with Mr. Humphrey", and that "once actual notice was received by the school officials of [CTC and the districts] the appropriate action was taken by suspending Mr. Humphrey and subsequently forcing him to resign, thereby eliminating any type of contact by Mr. Humphrey with any of the students at [CTC] while in school." Thus, defendants state that officials at CTC and the school districts did not act unreasonably after the Childline Report and did not act with deliberate indifference towards any plaintiff.

In Counts II, plaintiffs allege that when CTC and the school districts had actual knowledge of Humphrey's misconduct after the Childline Report, they had authority to take corrective action "to provide, offer, recommend, or coordinate adequate health, psychological, counseling and academic assistance services to [plaintiffs] to help remedy the harm [they] suffered due to discrimination and harassment, including sexual abuse and harassment", but CTC and the school districts chose not to do so. Plaintiffs aver that due to the actions and inactions by defendants after Humphrey's arrest, defendants acted with deliberate indifference to their rights "to a safe and secure education environment." Plaintiffs then allege that defendants impaired their access to educational opportunities and benefits in violation of Title IX by failing to provide them with health, psychological, counseling and academic

assistance services, and by failing to terminate or discipline their employees for their willful disregard or deliberate indifference to the safety and rights of the plaintiffs.

If an appropriate person at CTC and the school districts were personally aware of facts demonstrating a real danger to students, i.e., had actual knowledge of Humphrey's sexual abuse and harassment, then these defendants can be held liable under Title IX if they made "an official decision...not to remedy the violation." Does v. Southeast Delco School District, 272 F.Supp.3d at 688. "Actual knowledge exists if the school was aware of facts that indicated 'sufficiently substantial danger to students.'" Kobrick v. Stevens, 2017 WL 3839946, at *16 (M.D.Pa. Sept. 1, 2017), aff'd, 763 Fed.Appx. 216 (3d Cir. 2019) (citing Bostic, 418 F.3d at 361). "A clearly unreasonable response to actual notice of harassment also amounts to deliberate indifference." Kobrick, 2017 WL 3839946, at *16 (citation omitted).

"A finding of deliberate indifference depends on the adequacy of a school district's response to the harassment." S.K. v. North Allegheny School District, 168 F.Supp.3d at 801 (citation omitted). "[T]he sufficiency of the response must be viewed in accordance with the known circumstances." Id. (citation omitted). Thus, "[a] school district is 'deliberately indifferent' to sexual harassment 'only where the [school district's] response to the harassment or [failure to respond] is clearly unreasonable in light of the known circumstances.'" Lansberry v. Altoona Area School District, 318 F.Supp.3d 739, 751 (W.D.Pa. 2018) (citing Davis, 526 U.S. at 648). *See also* Gebser,

[524 U.S., at 290](#) (a response amounts to deliberate indifference if there is "an official decision by the [school district] not to remedy the violation.").

Here, the allegations in Count II of the complaints fail to state cognizable claims under Title IX against CTC and the school districts since the allegations do not plausibly show that these defendants acted unreasonably and with deliberate indifference after the May 2017 Childline Report. In fact, the allegations indicate that defendants made official decisions to remedy the abuse by Humphrey after the ChildLine Report and to prevent its recurrence. Defendants' quick response to the sexual harassment and abuse was adequate and not "clearly unreasonable in light of the known circumstances." Davis, 526 U.S. at 648. Specifically, Humphrey was immediately suspended and then, shortly thereafter, forced to resign removing the danger he posed to plaintiffs and the other male students in his class. As such, Humphrey was disciplined and punished. Defendants' response after the ChildLine Report was swift and decisive, and it was sufficient based on the known circumstances at the time. Based on the allegations, plaintiffs fail to plead plausible facts to show that the defendants acted with deliberate indifference to Humphrey's misconduct after it definitively became known. Thus, plaintiffs have pled an insufficient factual basis to permit a finding of deliberate indifference by defendants after the ChildLine Report.

Plaintiffs contend that "the failure to take corrective action by the defendant home school districts included the failure to provide counseling and other services to the students to remedy their harm" and that the failure to

28

provide them with assistance to remedy the effects of the harm they suffered due to the misconduct of Humphrey after the ChildLine Report and after Humphrey was arrested is sufficient to proceed with their Title IX claim in Count II. Plaintiffs argue that defendants failed to remedy the effects of the sexual abuse they suffered by providing them with counseling and other services and, that this suffices to show defendants acted with deliberate indifference to the abuse. Plaintiffs cite to Doe v. Russell Cty. Sch. Bd., 292 F. Supp. 3d 690 (W.D.Va. 2018), to support their contention that defendants were required to provide counseling services to them after the Childline Report of sexual abuse by Humphrey. In Doe, the District Court for the Western District of Virginia found that the school district failed to remedy the effects of sexual abuse by not offering counseling services to the student victim of the abuse perpetrated by a school employee.

Defendants state that even if they failed to offer any post-remedial relief to plaintiffs after Humphrey's arrest by recommending, or coordinating adequate health, psychological, counseling, and academic services as plaintiffs allege, this does not amount to a violation of Title IX since no such remedial relief is required under Title IX. Defendants contend that their response to the sexual abuse by Humphrey was not clearly unreasonable in light of the known circumstances and that they acted promptly to remedy the violation. They contend that their response to remedy the abuse by removing Humphrey was all that is required and, thus they cannot be held liable under Title IX as alleged in Count II. The school districts also reassert their

contention that they did not employ Humphrey and that plaintiffs cannot establish that they had any duty to remedy the abuse at CTC that arose from CTC's employment of Humphrey. Based on its discussion above, the court does not repeat its finding that for purposes of the instant motions, plaintiffs' allegations, namely, that Humphrey was authorized by CTC and the school districts to teach and that, as members of the JOC, the districts set policies regarding the operations of CTC, are sufficient to state Title IX claims against the school districts pending discovery.

"When an 'appropriate person' knows of sex-based discrimination and refuses to remedy the situation, his or her 'deliberate indifference' inevitably *cause*s the discrimination to continue." Douglas, 836 F.Supp.2d at 347 (citing Gebser, 524 U.S. at 290–291) (emphasis original). "Title IX's statutory enforcement mechanism provides a recipient of federal financial assistance with an opportunity to end discrimination 'by voluntary means' before prospective funding is jeopardized." Id. As such, plaintiffs "cannot hold the [defendants] liable under Title IX without establishing that the 'deliberate indifference' of an 'appropriate person or persons' caused [plaintiff students] to 'be subjected to discrimination.'" Id. (citations omitted). Thus, since it is not alleged that any of the plaintiff students were "subjected to [sexual abuse and harassment]" after the Childline Report and Humphrey's suspension, resignation and arrest, the defendants' alleged failure to provide plaintiffs with counseling and other services cannot be the basis to hold defendants liable under Title IX. In short, the alleged failures of defendants in the instant case

30

to provide counseling and other services to plaintiffs after the Childline Report did not subject plaintiffs to continued sexual abuse and harassment, or make them more vulnerable to it. The court does not find the Doe case persuasive and in its research could not find any similar cases within the Third Circuit finding that the failure to provide plaintiff students with counseling and other services can be the basis to hold the school liable under Title IX for failing to remedy a violation.

In Douglas, a teacher was alleged to have been sexually abusing a student in the school where she taught. The court in Douglas discussed whether the school district's response and remedial actions after an "appropriate person" had "actual notice" of the inappropriate sexual relationship between the teacher and the student complied with Title IX. The court in Douglas, id. at 348, stated:

> Title IX, ..., did not require the District to take a particular "form of disciplinary action" against [the teacher]. Davis, 526 U.S. at 649, 119 S.Ct. 1661. Instead, Title IX merely required the District to respond to [the teacher's] known acts of "discrimination" in a manner that was not "clearly unreasonable." Id. at 648–649, 119 S.Ct. 1661. The relevant question is whether [the school's appropriate persons] took reasonable actions to stop [the teacher's] discriminatory conduct. Warren, 278 F.3d at 170–171. [The teacher] was placed on administrative leave immediately after admitting that she had touched [the student] inappropriately.[] She submitted her resignation the next day. [ ] [The appropriate person] accepted [the teacher's] resignation and instructed her to return any school equipment or materials in her possession. [ ] The actions taken by [the appropriate persons] ended [the teacher's] discriminatory conduct. These actions were taken almost immediately after [a school employee] called the illicit relationship to the attention of the "appropriate persons." Title IX required the District to do nothing more. Davis, 526 U.S.

at 648–649, 119 S.Ct. 1661.

The court in Douglas, id. at 349, concluded that "[e]ven if the remedial actions taken by [the appropriate persons] were imperfect in some respects, they were not 'clearly unreasonable in light of the known circumstances.'" (citing Davis, 526 U.S. at 648). Further, "[a] school district is not required to respond to harassment or discrimination in a specific manner, nor is the district required to eradicate all sexual harassment; however, the school district's response must be reasonable in light of the known circumstances." Swanger v. Warrior Run School District, 346 F.Supp.3d 689, 705-06 (M.D.Pa. 2018).

In the instant case, the court finds that even if the defendants' remedial actions after the Childline Report were not as complete as plaintiffs allege they should have been due to their failure to provide plaintiffs with counseling and other services, defendants' remedial actions, similar to those taken in the Douglas case, simply were not "clearly unreasonable in light of the known circumstances." Indeed, the basis for liability under Title IX with respect to deliberate indifference "is an official decision by the [school] not to remedy the violation." Gebser, 524 U.S. at 290. Specifically, in Gebser, 524 U.S. at 290-91, a case involving a teacher who had an inappropriate sexual relationship with a minor student, the Supreme Court explained that a failure to adequately respond under Title IX, requires that the response amounts to "deliberate indifference"—or "an official decision by the [school district] not to remedy the violation." Thus, the court finds that despite the alleged deficiencies with the

32

defendants' post-remedial actions after the Childline Report, the defendants' prompt stated response was not deliberately indifferent.

Therefore, the motions to dismiss of CTC and the school districts with respect to Count II of the complaints will be **GRANTED**, and the Title IX claims in Count II will be **DISMISSED WITH PREJUDICE** since, based on the above discussion, the court finds it would be futile to allow an amendment of these claims. *See* Alston v. Parker, 363 F.3d 229, 236 (3d Cir. 2004) ("Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility.").

### 3. Count III, Title IX Retaliation Claim

In Count III, plaintiffs basically allege that CTC and the school districts failed to offer the plaintiff students any type of remedial measures or provide, offer, recommend, or coordinate adequate health, psychological, counseling, or academic assistance and services to the plaintiff students who were abused and harassed by Humphrey, and that they deliberately and recklessly chose not to do so in retaliation of the plaintiff students' involvement in the sexual abuse scandal by reporting the sexual abuse by Humphrey and cooperating with the law enforcement authorities. (Doc. 1-1, ¶'s 81-88, 19-1154).

It is also alleged that after Humphrey was arrested on May 30, 2017, "[CTC], by and through its employee, Robert Hudak, an instructional aide or paraprofessional in the automotive technology class, addressed the class in the days after Mr. Humphrey's arrest and accused minor students, including

33

[plaintiffs], of being liars and attempting to ruin Mr. Humphrey's reputation, allegedly stating that he hoped they all get what they have coming to them." (Doc. 1-1, ¶86, 19-1154).

Further, it is alleged that "[plaintiffs] suffered additional and often daily materially adverse actions and retaliation levied against [them] by agents, employees, supervisors, administrators and principals of Defendants by being called to the principals office and reprimanded for trivial issues that no other non-sexually abused student was disciplined." (Id., ¶87, 19-1154).

"Although the statute does not specifically mention retaliation, it is settled that retaliatory conduct is within the broad prohibition of 'discrimination' made unlawful by Title IX." S.K. v. North Allegheny School District, 168 F.Supp.3d at 803 (citing Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 173-74, 125 S.Ct. 1497 (2005)). No doubt that "retaliation taken against an individual because that individual has complained about sex discrimination is a covered form of discrimination under Title IX." Id. at 805 (citing Jackson, 544 U.S. at 173). "Thus, to assert a viable claim for retaliation under Title IX, Plaintiff[s] must plead facts sufficient to plausibly show that [defendants] "retaliated against [them] because [they] complained of sex [abuse and harassment]." Frazer v. Temple University, 25 F.Supp.3d 598, 615 (E.D.Pa. 2014) (citing Jackson, 544 U.S. at 184).

Specifically, "[t]o establish a prima facie case of retaliation, a plaintiff must show: (1) that he or she engaged in protected activity [under Title IX]; (2) defendant had knowledge of the protected activity; (3) adverse

34

school-related action was taken against plaintiff; and (4) a causal connection between the protected activity and the adverse action." <u>S.K. v. North Allegheny School District</u>, 168 F.Supp.3d at 803-04 (citing <u>Yan v. Penn State University</u>, 529 Fed.Appx. 167, 171 (3d Cir. 2013)). Further, plaintiff must show "intentional conduct ... to recover on a claim of retaliation." <u>Id</u>. at 805. "The first step in any assessment of a retaliation claim is to identify what conduct, if any, a reasonable jury could causally link to the existence of retaliatory animus." <u>Id</u>. at 806 (citations omitted). Retaliatory animus is "(1) intentional conduct aimed at inflicting injury or harm (2) taken because of a complaint about a perceived form of prohibited conduct." <u>Id</u>. "Protected activities include complaints of sexual discrimination to the courts, government agencies, or the funding recipient." <u>Dawn L. v. Greater Johnstown School Dist.</u>, 586 F.Supp.2d 332, 374 (W.D.Pa. 2008) (citations omitted). "To establish the requisite causal connection, Plaintiff must allege facts to demonstrate either: '(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link.'" <u>Frazer</u>, 25 F.Supp.3d at 615 (citing <u>Cooper v. Menges</u>, 541 Fed.Appx. 228, 232 (3d Cir. 2013)).

Defendants argue that plaintiffs' allegations that they retaliated against them for reporting Humphrey and cooperating with law enforcement authorities through their administration and employees does not allege plausible facts that they took adverse action against plaintiffs, and does not

allege plausible facts that a causal link existed between the protected conduct and their alleged adverse action.

The court finds that while plaintiffs' allegations meet the first and second elements of a Title IX retaliation claim, they do not meet the last two elements. In particular, "the complaint[s] do[] not allege specific action taken by the [defendants] that can be found to be 'materially adverse' within the meaning of Title IX's prohibition against retaliation." S.K. v. North Allegheny School District, 168 F.Supp.3d at 804. "To satisfy this requirement plaintiff must identify action that is adverse to a degree that it 'might well have dissuaded a reasonable [person] from making or supporting a charge of [or complaint about] discrimination.'" Id. (quoting Burlington Northern & Santa Fe Ry. v. White, 548 U.S. 53, 68, 126 S.Ct. 2405 (2006)); accord Dawn L. v. Greater Johnstown School Dist., 586 F.Supp.2d 332, 374 (W.D.Pa. 2008) ("Applying Title VII jurisprudence to Title IX retaliation claim and recognizing that to qualify as materially adverse, retaliation must be such that it would dissuade a reasonable person from making or supporting a report of alleged harassment.")). Being called into the principals office and being reprimanded for trivial matters is not sufficiently materially adverse with respect to a Title IX retaliation claim in the context alleged in this case based on the alleged retaliatory act. "Mere 'petty slights or minor annoyances' are not, therefore, material." Dawn L. v. Greater Johnstown School Dist., 586 F.Supp.2d at 374 (citations omitted).

Moreover, "[t]he assessment of whether particular conduct or action can

36

be found to be retaliatory is to be undertaken with particular attention to the attendant and surrounding circumstances", and "[t]he examination is focused on the alleged retaliatory action and not the conduct that brought about the original claim of discrimination." S.K. v. North Allegheny School District, 168 F.Supp.3d at 804 (internal citations omitted). "[A] material adverse action is one that 'produces injury or harm'", and "[t]he standard for judging whether an identified act or course of conduct is capable of producing injury or harm is an objective one." Id. (internal citations omitted). In this regard, "'[c]ontext matters.'" Id.(citation omitted).

Additionally, plaintiffs have not alleged facts that show "defendant[s] intentionally chose to fail in [their] remedial efforts in order to subject plaintiff to additional [abuse] and harassment for reporting the same." Id. at 806. "It is plaintiff's burden to make a plausible showing that the identified action intentionally was implemented to cause harm or injury because complaints were made about sexual discrimination." Id. (citation omitted). "The mere possibility that defendant intentionally failed to curb the harassment by plaintiff's [teacher] falls short of the plausible showing of intentional conduct needed to identify a form of materially adverse action needed to state a claim for retaliation." Id. Here, there are insufficient facts alleged regarding how defendants took any actions "in order to inflict injury or harm on [plaintiffs] for making complaints about [Humphrey]." Id. Plaintiffs allege that the defendants took adverse action against them by singling them out and treating them differently by withholding counseling or other services from them to remedy

Humphrey's abuse. However, as discussed above, the failure of defendants to offer or provide plaintiffs with any counseling or other services after the Childline Report and Humphrey's removal from CTC does not amount to deliberate indifference and thus, cannot serve as a materially adverse action with respect to plaintiffs' retaliation claim. Further, as the school districts point out, despite plaintiffs' contention that they were treated differently by defendants due to their reports of Humphrey's abuse, plaintiffs do not allege that they provided counseling services to other similarly situated student victims of abuse. Thus, the plaintiff students who reported sexual abuse by Humphrey were not singled out in this respect.

Nor are there adequate factual grounds alleged of a causal connection between plaintiffs' complaints and cooperation with authorities about Humphrey's sexual abuse and harassment and any materially adverse action. "Bald and conclusory assertions of cause and effect simply fall short of the level of factual setting and context required to state a claim [of retaliation under Title IX]." Id. at 806.

As in the case of S.K. v. North Allegheny School District, 168 F.Supp.3d at 807, "[p]laintiff[s] ha[ve] failed to supply the factual averments and context that will permit an inference that defendant[s] harbored retaliatory animus and acted on it by engineering a particular course of additional [teacher]-based [sexual abuse and] harassment." The isolated alleged comments by a teacher's aide are not sufficient to show that defendants had a retaliatory animus towards plaintiffs and the other student victims, especially since it is

38

not alleged that any of defendants' officials were even aware of the aide's comments or condoned them.

Since plaintiff "failed to make such a plausible showing with regard to any form of intentional adverse conduct attributable to defendant[s]," "a plausible showing of a causal connection between [plaintiffs'] complaints [about Humphrey and cooperation with authorities] and the alleged forms of retaliation has not been set forth." Id. Thus, since plaintiffs have failed to plead plausible claims of retaliation under Title IX, the motions to dismiss of CTC and the school districts with respect to Count III of the complaints will be **GRANTED**, and the Title IX retaliation claims in Count III will be **DISMISSED WITH PREJUDICE** since, based on the above discussion, the court finds it would be futile to allow an amendment of these claims.

**B. Section 1983 Claims, Counts IV-VI**

**1. Count IV, Fourteenth Amendment Due Process Claims and Count VI, Failure to Train & Supervise Claims**

In Count IV of their complaints, plaintiffs allege that they had the right to security, bodily integrity and to be free from sexual abuse as public school students, and that they suffered "sexual misconduct and/or sexual abuse and/or sexual harassment" by Humphrey, an employee of defendants CTC and the school districts, in violation of the Due Process Clause of the 14th Amendment. Plaintiffs also allege that CTC and the school districts have unconstitutional customs and policies of "failing to investigate evidence of [their] employees' misconduct, sexual abuse and/or sexual harassment

39

against students in the nature of violations of the right to personal security and bodily integrity, as well as the right be free from sexual misconduct and/or sexual abuse and/or sexual harassment, and failing to adequate supervise and train [their] employees with regard to maintaining, preserving and protecting students from violation of their right to personal security and bodily integrity." Further, plaintiffs allege that the conduct of defendants, through their agents, employees, servants, and officers and other school district personnel, 'in failing to put in place policies to adequately protect students from inappropriate conduct by teachers, was committed in deliberate and/or conscious disregard of substantial and/or unjustifiable risk of causing harm to [plaintiffs], and was so egregious as to shock the conscience." Further, the alleged conduct caused plaintiffs' harm. (Doc. 1-1, ¶'s 98-99, 19-1154).

In Count VI, plaintiffs allege that CTC and the school districts failed to properly train and supervise their teachers, administrators, officers, agents, and/or employees regarding how to protect their students from sexual abuse by a teacher. Specifically, it is alleged that defendants failed to properly train and supervise their staff as to mandated investigative requirements, including the following:

a) failing to take immediate and appropriate action to investigate or otherwise determine what occurred once informed of possible sexual violence;

b) failing to take prompt and effective steps to end the sexual violence, prevent its recurrence, and address its effects; and

40

c) failing to take steps to protect the plaintiff and other minor students as necessary.

(Doc. 1-1, ¶131, 19-1154).

Plaintiffs also allege that "defendants' failure to provide proper and adequate training to their teachers, administrators, officers, agents, and employees constituted a deliberate indifference to the presence of an excessive risk of danger to the health, welfare, and safety of the students of defendants, including plaintiff students. (Doc. 1-1, ¶133, 19-1154).

Plaintiffs' due process claims in Count IV and failure to train and supervise claims in Count VI are brought under §1983. The school district and CTC are state actors for purpose of §1983. *See* Kline ex rel. Arndt v. Mansfield, 454 F.Supp.2d 258, 262 (E.D.Pa. 2006).

Section 1983 creates no substantive rights, but rather allows a plaintiff to vindicate violations of rights created by the U.S. Constitution or federal law. Baker v. McCollan, 443 U.S. 137, 145 n.3 (1979); Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006). Thus, to state a claim under §1983, the plaintiffs must show that the defendants, acting under color of state law, deprived plaintiffs of a right secured by the Constitution or laws of the United States. 42 U.S.C. §1983; American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999); Kaucher, 455 F.3d at 423.

The 14th Amendment prohibits a state from "depriv[ing] any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, §1. "To prevail on a substantive due process claim, a plaintiff must prove that

she has a 'fundamental' liberty interest implicating Fourteenth Amendment protection and that a defendant's conduct [concerning] said interest was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" Kobrick, 2017 WL 3839946, *6 (citation omitted).

As the court in Kobrick, 2017 WL 3839946, *7, explained:

> Among the fundamental liberty interests protected by substantive due process is the "right to bodily integrity." Albright v. Oliver, 510 U.S. 255, 272 (1994) (citing Planned Parenthood of Se. Pa. v. Casey, 505 U.S. 833, 847-49 (1992)); Phillips v. Cty. of Allegheny, 515 F.3d 224, 235 (3d Cir. 2008) (citations omitted). This right includes the right to be free from "invasion of ... personal security through sexual abuse." Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 726 (3d Cir. 1989), cert. denied, 493 U.S. 1044 (1990). In the public school context, the Third Circuit Court of Appeals has expressly held that the Due Process Clause encompasses and defends a student's right "to be free from sexual abuse by school staff."

Plaintiffs essentially allege that the defendants, through their policymaking officials, maintained and endorsed policies and practices that resulted in violations of their constitutional rights. Plaintiffs also allege that defendants failed to properly train their teachers and failed to supervise their teachers to prevent the known and pervasive sexual abuse and harassment that they and other male students were subjected to by Humphrey.

Since defendants are municipal agencies, the standards annunciated in Monell apply to them. *See* Malles v. Lehigh County, 639 F.Supp.2d 566 (E.D.Pa. 2009). Under the Supreme Court precedent of Monell v. Dep't. of Soc. Servs., 436 U.S. 658, 694 (1978), a municipality can be held liable under §1983 only if the plaintiff shows that the violation of his federally protected

rights resulted from the enforcement of a "policy" or "custom" of the local government. A court may find that a municipal policy exists when a "'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986)). It is also possible for a court to find the existence of a municipal policy in "the isolated decision of an executive municipal policymaker." City of St. Louis v. Praprotnik, 485 U.S. 112, 139 (1988). "A course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanent and well settled' as to virtually constitute law." Andrews, 895 F.2d at 1480 (citations omitted). There must be a "direct causal link" between the municipal policy or custom and the alleged constitutional violation. City of Canton, Ohio v. Harris, 489 U.S. 378, 385 (1989).

Moreover, municipalities such as the school districts and CTC are not liable under §1983 merely for employing someone who violates a person's civil rights; rather, a municipality that does not directly violate a person's civil rights is liable only where it has in place a policy or custom that led to the violation. *See* Mann v. Palmerton Area School Dist., 33 F.Supp.3d 530, 540-41 (M.D.Pa. 2014).("Municipal liability only attaches when a plaintiff demonstrates that an official policy or custom caused the asserted constitutional deprivation." (citation omitted); Beck v. City of Pittsburgh, 89 F.3d 966, 972 (3d Cir. 1996) (Municipal liability applies "to only those

constitutional torts actually caused by the municipality."). The plaintiff bears the burden of identifying the policy or custom. Id. This rule ensures that a municipality will only be liable where it is the "moving force" behind the plaintiff's injury. Id. Plaintiff can also show a custom by "evidence of knowledge and acquiescence." Beck, 89 F.3d at 971. If plaintiff establishes a custom, he must also "demonstrate that, through its deliberate conduct, [defendant school] was the 'moving force' behind [his alleged due process violation]." Bd. of County Comm'rs of Bryan County v. Bryan, 520 U.S. 397, 404, 117 S.Ct. 1382 (1997).

"Additionally, if the policy at issue relates to a failure to train or supervise municipal employees, "liability under section 1983 requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." Carter v. City of Phila., 181 F.3d 339, 357 (3d Cir. 1999) (citation omitted).

As the court in Poe v. Southeast Delco School District, 165 F.Supp.3d 271, 276 (E.D.Pa. 2015), explained:

> Such a failure [to train or supervise municipal employees] "can ordinarily be considered deliberate indifference only where the failure has caused a pattern of violations." Berg v. Cty. of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000). However, a plaintiff may also show deliberate indifference by presenting evidence that officials were aware of the risk of constitutional violations and the alternatives to preventing such harm, but either "deliberately chose not to pursue these alternatives or acquiesced in a longstanding policy or custom of inaction in this regard." Simmons v. City of Philadelphia, 947 F.2d 1042, 1064 (3d Cir. 1991); see also Canton, 489 U.S. at 396–97, 109 S.Ct. 1197 (O'Connor, J., concurring in part and dissenting in part) (suggesting a plaintiff

might show "deliberate indifference" in one of two ways: by demonstrating "that policymakers were aware of, and acquiesced in, a pattern of constitutional violations," or by demonstrating that a municipality failed "to train its employees concerning a clear constitutional duty implicated in recurrent situations that a particular employee is certain to face.").

*See also* Kobrick, 2017 WL 3839946, *11 ("To prevail on a failure-to-train claim, a plaintiff must identify a training deficiency which has a 'causal nexus' to their injuries and demonstrate that the lack of training reflects deliberate indifference to constitutional rights.") (citations omitted); Robinson v. Fair Acres Geriatric Center, 722 Fed.Appx. 194, 199 (3d Cir. 2018) ("In order for a failure-to-train claim to support Monell liability, a plaintiff must show 'that in light of the duties assigned to [the relevant employees,] the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [municipality] can reasonably be said to have been deliberately indifferent to the need.'") (citation omitted).

Further, "[d]eliberate indifference stems from government inaction, namely a [municipality's] failure to train its employees on avoiding constitutional violations." Wright v. City of Philadelphia, 685 Fed.Appx. 142, 147 (3d Cir. 2017). "To show the deliberate indifference required for a 'failure to train' claim, a §1983 plaintiff must show 'a municipal actor disregarded a known or obvious consequence of his action.'" Wright, 685 Fed. Appx. at 147 (citation omitted). "Deliberate indifference 'may stem from a failure to act despite notice [that municipal] employees continually violate citizens' rights."

Lansberry, 318 F.Supp.3d at 759 (citing Wright, 685 Fed.Appx. at 147). "Ordinarily, finding policymakers deliberately indifferent based on a failure-to-train theory requires '[a] pattern of similar constitutional violations by untrained employees.'" Id. (citing Wright, 685 Fed.Appx. at 147).

Defendants argue that Counts IV and VI of the complaints should be dismissed because they fail to sufficiently identify a policy or custom that any defendant had which caused plaintiffs' injuries, and because they fail to allege facts that support a finding of deliberate indifference. Defendants contend that plaintiffs have not sufficiently alleged that either they or one of their policymakers promulgated a policy of not reporting or preventing sexual abuse of students by teachers. Further, defendants state that plaintiffs have not alleged sufficient facts supporting that any policymaker at their schools or districts "had knowledge of and exhibited deliberate indifference in the face of a known threat or high likelihood of injury to [them] (a known threat or high likelihood that Plaintiff[s] would be sexually abused and/or harassed)", and that there are no specific factual allegations that any of their policymakers were "aware of any inappropriate actions by Mr. Humphrey toward Plaintiff[s]." Further, defendants contend that plaintiffs failed to allege facts that a "pattern of similar constitutional violations put [them] on notice of a need to train other teachers to identify signs of sexual misconduct."

Defendants also argue that plaintiffs failed to "allege or identify any particular failure that was a moving force to [plaintiffs'] injury or that demonstrates a deliberate indifference on [their] part towards [plaintiffs']

46

rights."

At this early stage of the cases, plaintiffs' complaints sufficiently state plausible municipal liability claims against the school districts and CTC under Monell with respect to their 14th Amendment due process claims in Count IV and their failure to train and supervise claims in Count VI. *See* Moeck v. Pleasant Valley School Dist., 983 F.Supp.2d 516, 524 (M.D.Pa. 2013). Plaintiffs have alleged that the school districts and CTC unconstitutionally implemented or executed a policy statement, ordinance, regulation, decision or custom leading to the stated violations of their constitutional rights. Mann v. Palmerton Area School Dist., 33 F.Supp.3d at 540. "[A]n employee's actions can be determined to arise from a policy or custom 'where the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.'" Lansberry, 318 F.Supp.3d at 758 (citing Robinson, 722 Fed.Appx. at 198). Moreover, "[a] custom [can be] an act that has not been formally approved by an appropriate decisionmaker, but that is so widespread as to have the force of law." K.E. v. Dover Area School District, 2017 WL 4347393 at *5-6 (M.D. Pa. 2017) (citations omitted). "A plaintiff may also establish a policy or custom when a policymaker has failed to take affirmative action despite an obvious need to correct the inadequacy of existing practice which is so likely to result in the violation of constitutional

rights that inaction exhibits deliberate indifference to the need." Id.

Additionally, the plaintiffs' failure-to-act claims against defendants are based, in part, on the defendants' alleged failure to respond to widely known sexual abuse by Humphrey despite his pattern of similar abuse during the school year. "To prevail on this claim, [plaintiffs] must establish a practice of 'reckless indifference to instances of known or suspected sexual abuse of students by teachers', and "proof that school administrators were placed on actual notice of the abusive contact before [] constitutional liability for teacher misconduct to the district [can be imposed]." Kobrick, 2017 WL 3839946, *9 (internal citations omitted). "[N]egligent failure to discover sexual abuse [by the school] does not suffice for municipal liability." Id. at *10 (citation omitted).

Here, plaintiffs have stated an abundance of facts to show that the unlawful conduct of Humphrey regarding his repetitive and pervasive sexual harassment and abuse of minor students in his class during the school year was so obvious and known as to constitute deliberate indifference on defendants' part to the constitutional rights of plaintiffs. (*See* Doc. 22 at 68-70, 19-1154). Plaintiffs have also alleged numerous actions that defendants could have done to prevent or limit the constant abuse by Humphrey towards his male students which occurred for a year. Based on the numerous facts alleged in the complaints and the pattern of similar constitutional violations by Humphrey towards the male students in his class, "[defendants'] policymakers' indifference may stem from a failure to act despite notice [their] employee[] continually violate [the students'] rights." Wright, 685 Fed.Appx.

at 147. *See also* <u>Kobrick</u>, 2017 WL 38329946, *7 ("[A] custom is an act that is not formally approved but is nonetheless 'so widespread as to have the force of law'", and "[a] plaintiff may [] establish municipal liability by demonstrating that a policymaker failed to take affirmative action despite an obvious need to correct the 'inadequacy of existing practice [which is] so likely to result in the violation of constitutional rights' that inaction exhibits 'deliberate indifference' to the need." (internal citations omitted).

In the <u>Poe</u> case, 165 F.Supp.3d at 277, "plaintiffs [] alleged that the District's culpable policies or customs include the following: the failure to train District personnel to investigate abuse allegations; failure to conduct abuse investigations; failure to report credible allegations; failure to ensure compliance with state statutory requirements; failure to screen teacher applicants for past allegations of abuse; and failure to properly discipline teachers accused of abuse", and that "these [alleged] failures reveal deliberate indifference to complaints raised by students." The court in <u>Poe</u>, <u>id</u>., found that despite the fact that "Plaintiffs have not articulated [in their complaint] what kind of baseline training was provided to personnel or what kind of allegedly-inadequate policies were in place regarding abuse investigations", "Plaintiffs have sufficiently articulated facts supporting a claim that the District's failure to implement more rigorous training and oversight amounts to deliberate indifference that caused Plaintiffs' constitutional injuries [i.e., minor student allegedly was inappropriately touched by a teacher]."

As discussed above, plaintiffs have alleged sufficient facts that an

appropriate person of CTC and the school districts had actual knowledge of the conduct of Humphrey prior to the ChildLine Report and the investigation commenced by the SPD. Plaintiffs have also stated plausible claims for deliberate indifference since they allege that defendants had notice of a pattern of similar constitutional violations by Humphrey, over an extended period of time, who had not been properly trained. *See* Wright, 685 Fed.Appx. at 147. In particular, plaintiffs have alleged that defendants received, and failed to adequately respond to, previous reports of sexual harassment and abuse by Humphrey regarding male students in his class, that other personnel of CTC witnessed and were aware of the abuse, that students reported the abuse to staff, and they allege that the rights of minor students in Humphrey's class were violated due to the known sexual abuse incidents that the defendants failed to properly address. Plaintiffs have also alleged many specific instances of continual unwanted sexual harassment and abuse by Humphrey towards the male students in his class, including themselves. Further, plaintiffs allege widespread sexual abuse and harassment of several male students by Humphrey at CTC which was common knowledge by staff and administrators that could have plausibly put defendants on notice that the constitutional rights of their students were being violated. Municipal liability of a school district regarding sexual abuse of students by teachers may be established by showing the school's "toleration, condonation[,] or encouragement" of sexual misconduct, and the inaction by school administrators "'at a minimum' [can be found to have] facilitated a pattern of

abuse." Stoneking v. Bradford Area School District, 882 F.2d 720, 725, 730-31 (3d Cir. 1989).

Thus, plaintiffs have plausibly alleged that, based on the known, pervasive and repetitive sexual abuse by Humphrey towards his male students at CTC over the course of the school year, the need for additional training by defendants was "so obvious" and the status quo so likely to result in constitutional violations that defendants can reasonably be said to have been deliberately indifferent to the needs of plaintiffs and the other male students in Humphrey's class. (*See* Doc. 23 at 48-50, 19-1154). In Robinson, 722 Fed.Appx. at 198, the Third Circuit explained that one of the "situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under §1983", is "where the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need." (citing Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003)).

Plaintiffs have also alleged that Morgantini personally observed Humphrey's misconduct and, that other staff at CTC, all of who were mandatory reporters under Pennsylvania law, were aware of it. (Id. at 51). Plaintiffs will be given the chance to conduct discovery to determine what

exactly Morgantini, as well as other staff at CTC, knew about Humphrey's improper conduct in his class, when they knew it, and whether he, or any staff, reported their observations and suspicions about Humphrey's abusive behavior to CTC and the respective school districts whose students were attending CTC and who were members of the JOC. At this stage, it suffices that plaintiffs have alleged that Morgantini did report Humphrey's improper conduct to the administrators of CTC, as he was legally obliged to do, and that they took no action. Where, as here, plaintiffs allege that CTC and its administrators knew or should have known that a teacher was sexually abusing and harassing several minor students in his class and that they did not take any action to end the conduct then plaintiffs have alleged sufficient facts to make out a claim wherein their rights to bodily security have been violated as a result of a policy or custom, thus sustaining a §1983 claim. *See* Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 730-731 (3d Cir. 1989). The court will allow plaintiffs discovery to determine if Humphrey's wrongful conduct was so open and widespread that it was also known by administrators, principals, superintendents and Board Members of the defendant school districts, particularly since the plaintiffs were minor students enrolled in their districts and the Board Members of their districts were on the JOC.

No doubt that if Morgantini and other staff reported Humphrey's misconduct, then defendants should have taken some action to protect the students and stop Humphrey's abusive conduct. As plaintiffs state, such

evidence shows both "(1) the Defendant[s'] deliberate indifference to the need to adequately monitor Richard Humphrey and protect students from his sexual misconduct and investigate the inappropriate conduct, and (2) their failure to train school personnel on how to maintain/protect/preserve minor students to prevent sexual misconduct, sexual abuse and/or harassment from occurring." As such, "Plaintiffs have sufficiently articulated facts supporting a [Monell] claim that the [defendants'] failure to implement more rigorous training and oversight amounts to deliberate indifference that caused Plaintiff['s] constitutional injuries." Poe, 165 F.Supp.3d at 277. *See also* Robinson, 722 Fed.Appx. at 199-200. Following discovery, defendants can file summary judgment motions, if appropriate, regarding their liability under Monell. *See id.*

Thus, the motions to dismiss of CTC and the school districts with respect to Count IV, 14th Amendment due process claims, and Count VI, failure to train and supervise claims, will be **DENIED**.

### 2. Count V, State-Created Danger Claims

In Count V of the complaints, plaintiffs raise state-created danger claims and allege that the defendants placed them in danger of being inappropriately touched by Humphrey. Specifically, the complaints allege that during the 2016-2017 school year, Humphrey made unwanted sexual advances towards several minor male students in his class at CTC, including plaintiffs, and used vulgar and explicit language, constantly engaged in inappropriate and unwanted physical contact with students by groping and rubbing their genital

area. (Doc. 1-1, ¶20, 19-1154). The complaints also allege that the improper conduct by Humphrey was an open secret among the students in his class, among students in other classes at CTC, and "among staff and/or administrators of [CTC]" during Humphrey's tenure there. (Id., ¶'s 21, 22). It is further alleged that several of Humphrey's inappropriate sexual abuses occurred in the classroom with at least one other adult teacher or aide present, including Joseph Granteed, Robert Hudak, and Louis Morgantini, and that employees and officials of CTC knew of Humphrey's propensity to engage in improper touching and groping of minor male students, and were aware that Humphrey was constantly engaging in abusive contact with students.

"Although the Fourteenth Amendment does not generally guarantee an 'affirmative right to governmental aid or protection,' an exception exists when state actors create a danger that causes a victim harm." Poe, 165 F.Supp.3d at 277(citing Ye v. United States, 484 F.3d 634, 636 (3d Cir. 2007)). Thus, the Third Circuit has "recognized that a state actor may be held liable under the 'state-created danger' doctrine for creating danger to an individual in certain circumstances." Henry v. City of Erie, 728 F.3d 275, 281 (3d Cir. 2013) (citing Morrow v. Balaski, 719 F.3d 160, 176 (3d Cir. 2013)). Liability may attach under this doctrine "where the state acts to create or enhance a danger that deprives the plaintiff of his or her Fourteenth Amendment right to substantive due process." Morrow, 719 F.3d at 177 (citing Kneipp v. Tedder, 95 F.3d 1199, 1205 (3d Cir. 1996)).

54

In order to prevail on a state-created danger theory, the plaintiffs must establish all of the following elements: (1) the harm ultimately caused was foreseeable and fairly direct; (2) a state actor acted with a degree of culpability that shocks the conscience; (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all. Id. (quoting Bright v. Westmoreland Cnty., 443 F.3d 276, 281 (3d Cir. 2006)).

Defendants argue that plaintiffs fail to establish the four requisite elements regarding their state-created danger claims.

The court finds that although plaintiffs have pled enough facts to satisfy the first three elements with respect to their state-created danger claims, the fourth element has not been met.

Plaintiffs have alleged enough facts to show that the harm they suffered was foreseeable and fairly direct. "To adequately plead 'foreseeability,' a plaintiff must 'allege an awareness on the part of the state actors that rises to [the] level of actual knowledge or an awareness of risk that is sufficiently concrete to put the actors on notice of the harm.'" Poe, 165 F.Supp. 3d at 278 (citing Phillips v. Cty. of Alleghney, 515 F.3d 224, 238 (3d Cir. 2008)).

The Complaints allege that during the 2016-2017 school year,

Humphrey made many sexual advances towards several minor male students in the class, including plaintiffs, and that he also physically abused and molested the students, and that several of these incidents occurred in his classroom with at least one other adult teacher or aide present, including Granteed, Hudak, and Morgantini. It is also alleged that defendants' employees and officials were aware of Humphrey's proclivity to engage in improper touching and groping of minor male students and, that they were aware that Humphrey was using vulgar, foul and sexually explicit language in class and constantly engaging in inappropriate conduct and abusive behavior. In fact, the complaint alleges that it was an open secret among the students in the classes as well as the defendants' staff and administrators that Humphrey was constantly engaging in inappropriate and unwanted physical contact with his students. It is further alleged Morgantini acknowledged that he saw some Humphrey's inappropriate conduct and advised the students that he would "keep an eye on [Humphrey]" and would have to "do something" and speak with others if Humphrey's behavior continued. Lastly, plaintiff avers that Humphrey's inappropriate conduct and sexual abuse was "open, widespread and known by students, staff, and defendants."

Since plaintiffs have pled sufficient facts alleging that both defendants and their staff knew of Humphrey's "dangerous propensities, it is reasonable to infer that [plaintiffs] could be [] foreseeable victim[s] of the foreseeable harm that would result from such [conduct]." Id. Like Phillips, in this case a strong causal nexus between the defendants' alleged actions and the ultimate

harm to their students is pled.

The second element requires the plaintiffs to sufficiently allege that the defendants acted in willful disregard for or deliberate indifference to their safety. Morse, 132 F.3d at 910. "The touchstone of due process is protection of the individual against arbitrary action of government." Wolff v. McDonnell, 418 U.S. 539, 558 (1974) (citing Dent v. West Virginia, 129 U.S. 114, 123 (1889)); see County of Sacramento v. Lewis, 523 U.S. 833, 845 (1998); Kaucher, 455 F.3d at 425. "[O]nly the most egregious official conduct can be said to be arbitrary in the constitutional sense." Lewis, 523 U.S. at 846 (internal citation omitted); Kaucher, 455 F.3d at 425. In a substantive due process claim, official conduct is egregious only when it "shocks the conscience and violates the decencies of civilized conduct." Lewis, 523 U.S. at 846-47 (internal citation omitted); Kaucher, 455 F.3d at 425. There is no definitive standard for "shocks the conscience," and the determination of whether conduct shocks the conscience entails an analysis of the facts in a particular case. Kaucher, 455 F.3d at 425-26. In a case like the instant one involving a claim of municipal liability, the standard for "shocks the conscience" is deliberate indifference. Lewis, 523 U.S. at 850 & n.10; Kaucher, 455 F.3d at 426-27 & n.4. Deliberate indifference is "a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Bd. of County Comm'rs v. Brown, 520 U.S. 397, 410 (1997); Kaucher, 455 F.3d at 427 n.4.

Inherent to the concept of deliberate indifference is the awareness of a

real danger. As discussed above, the complaints allege numerous facts to show that Humphrey's actions are a fairly direct result, or "obvious consequence," of the defendants' actions. As plaintiffs explain:

> Defendant[s] knew or should have known of Richard Humphrey's sexual abuse on minor male students, including Plaintiffs, for a year. Defendant[s], [their] employees/agents had a year to deliberate the consequences of Richard Humphrey's sexual abuse, yet, permitted Richard Humphrey unfettered access to sexually abuse and molest the minor students, including Plaintiffs. Indeed, the Complaints' allegations (taken as true) demonstrate that Defendants had actual knowledge and awareness of the risk of harm inherent in allowing Richard Humphrey continued access to the minor male students.

Thus, plaintiff's allegations sufficiently show how defendants' actions shocked the conscious and amounted to deliberate indifference, and they meet the second element.

The third element requires a plaintiff to adequately plead that he had a relationship with the state "such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general." Kaucher, 455 F.3d 431. No doubt that a student attending classes within a public school district satisfies the "special relationship" element of a state-created danger claim. *See* Hamilton v. Spriggle, 965 F.Supp.2d 550, 593 (M.D.Pa. 2013); Cuvo v. Pocono Mtn. School Dist., 2019 WL 1424524, *5 (M.D.Pa. Mar. 29, 2019).

Plaintiffs allege that they were enrolled at CTC and in their respective school districts during the 2016- 2017 school year, and that Humphrey was

employed by CTC and each respective school district, that Humphrey was authorized to teach by CTC and the school districts, and thus he was acting under color of state law.

As such, plaintiffs have alleged sufficient facts regarding the relationship between themselves as minor students and Humphrey, a state actor, to satisfy the third element of their state-created danger claims.

Defendants contend that plaintiffs have not satisfied the fourth element because there was no affirmative action by them which made plaintiffs more vulnerable than they would have been had the defendants done nothing at all. Under the fourth element, the Third Circuit has found that liability "is predicated upon the states' affirmative acts which work to the plaintiffs' detriments in terms of exposure to danger." Poe, 165 F.Supp. 3d at 278 (citing Ye, 484 F.3d at 638–39 (3d Cir. 2007)). The "[fourth] element, which 'can be broken down into its parts,' requires that: '`(1) a state actor exercised his or her authority, (2) the state actor took an affirmative action, and (3) this act created a danger to the citizen or rendered the citizen more vulnerable to danger than if the state had not acted at all.'" Poe, 165 F.Supp. 3d at 278 (citing Ye, 484 F.3d at 638–39 (3d Cir. 2007)). As such, in order to establish the fourth element of a state-created danger claim, the plaintiff must identify "an affirmative action, rather than inaction or omission." Phillips, 515 F.3d at 236 (citations omitted). While "the line between action and inaction is not always easily drawn," Morrow, 719 F.3d at 178, the Third Circuit has "never found a state-created danger claim to be meritorious without an allegation and

subsequent showing that state authority was affirmatively exercised." Bright, 443 F.3d at 282. Indeed, it is a "misuse of state authority, rather than a failure to use it, that can violate the Due Process Clause." Id. *See also* Lansberry, 318 F.Supp. 3d at 755 ("The affirmative act requirement 'ensures that defendants are only liable for misuse of state authority, rather than a failure to use it.'") (citation omitted). The requirement of an affirmative act serves to distinguish cases where state officials might have done more from cases where officials created or increased the risk itself. Morrow, 719 F.3d at 179 (alterations and citation omitted).

"[W]hen determining whether a state actor committed an affirmative act, a court should 'first evaluate the setting or the 'status quo' of the environment before the alleged act or omission occurred, and then to ask whether the state actor's exercise of authority resulted in a departure from that status quo.'" Lansberry, 318 F.Supp. 3d at 755 (citations omitted).

As such, "[t]he Third Circuit has repeatedly rejected attempts by plaintiffs to 'redefine clearly passive inaction as affirmative acts.'" Id. (string citations omitted). Further, "a school's failure to enforce its own policy does not constitute an affirmative act", id. at 755-56 (citations omitted), including the alleged failure of the school's staff to comply with the state-mandated reporting of sexual abuse of students under 23 Pa.C.S.A. §6311. *See* Beam v. W. Wayne Sch. Dist., 165 F.Supp.3d 200, 215 (M.D.Pa. 2016) (court dismissed state-created danger claim and held that the school's failure to comply with state-mandated plan for a special education student, who

60

committed suicide, did not constitute an affirmative act).

Additionally, the defendants' "failure to adequately address the [sexual abuse] that [plaintiffs] suffered did not constitute an affirmative act." Lansberry, 318 F.Supp. 3d at 756 (citations omitted).

Plaintiffs state that they have alleged that the employees of defendants knew about Humphrey's improper touching and groping of minor male students and, that they also became aware that Humphrey was engaging in inappropriate and unwanted physical contact with his minor male students. It is also alleged despite this knowledge, defendants "never intervened in the classroom", and "did not warn the parents", and that one CTC's employees, i.e. Morgantini, simply explained Humphrey's conduct by stating, "you know the way he is." Thus, plaintiffs contend that their allegations "show a calculated decision that was made by Defendants which increased [their] vulnerability to harm", and that "but for the state actors authority to create the opportunity for Richard Humphrey to continuously sexually molest minor students, including plaintiffs, it would otherwise not have existed."

Here, the court finds that plaintiffs have not sufficiently identified an affirmative action by the defendants that caused them, and the other student victims, to be more vulnerable than they would have been had the defendants not acted at all. Rather, the plaintiffs' allegations amount to a claim that it was the defendants' inaction, i.e., their failure to adequately train, supervise and monitor Humphrey and, their failure to act to stop the abuse, that put them and the other student victims at risk. Despite the plaintiffs' allegations, the

61

Third Circuit has consistently found that "failures to act cannot form the basis of a valid §1983 [state-created danger] claim." Kaucher v. Cnty. of Bucks, 455 F.3d 418, 433 n.11 (3d Cir. 2006); see also Bright, 443 F.3d at 284 ("failure to protect an individual against private violence does not violate the Due Process Clause."); Carlin v. Marren, 2012 WL 4717899, at *1 (E.D.Pa. Oct. 3, 2012) ("In pleading her state-created danger claim, Plaintiff points to the following conduct committed by Rescue Squad: failure to provide its members with sexual harassment training, failure to impose bunkroom policies, failure to maintain separate sleeping facilities for men and women, failure to implement adequate security measures, failure to train and supervise members and failure to restrict access to the Rescue Squad building. These allegations amount to nothing more than a series of actions not taken by Defendant. As failures to act do not render Defendant liable under the fourth element, Plaintiff fails this element and cannot proceed on a state-created danger claim."); Nawuoh v. Venice Ashby Cmty. Ctr., 802 F.Supp.2d 633, 642 (E.D.Pa. 2011) (failure to train is not an affirmative act that satisfies the fourth element); Estate of Pendelton ex rel. Pendelton v. Davis, 2007 WL 1300743, at *11 (M.D.Pa. May 3, 2007) (failures of supervision or training do not meet the affirmative act requirement of the state-created danger test).

Despite the allegations that defendants' employees were aware of Humphrey's improper conduct and sexual abuse of his students but failed to intervene and warn parents and authorities, the court finds that plaintiffs have failed to establish how the defendants' failure to provide adequate training,

supervision and monitoring of Humphrey created a new danger for them, and the other student victims, or rendered them more vulnerable to danger than had the defendants not acted at all. Morrow, 719 F.3d at 178. Further, "while violations of the minor Plaintiffs' Fourteenth Amendment rights caused by the [defendants'] policies may properly be considered under the Plaintiffs' Monell claim, the [defendants'] [are] not [] proper defendant[s] for the state-created danger claim." Poe, 165 F.Supp. 3d at 279 (citation omitted).

As in Lansberry, 318 F.Supp. 3d at 756, "the court sympathizes with [plaintiffs and the other student victims of Humphrey's abuse] and does not condone [defendants' alleged] inaction in the face of the persistent [abuse] that [Humphrey's male students] faced", and "while the [] Complaint[s] describe[] a tragic series of events, [they] fail[] to allege any affirmative use of state authority on the part of [defendants]."

Therefore, because the defendants did not affirmatively use their authority in a way that created a danger to plaintiffs while they were in Humphrey's class or that rendered plaintiffs more vulnerable to danger than had they not acted at all, the plaintiffs are unable to establish a substantive due process claim under a state-created danger theory. *See* Bridges ex rel. D.B. v. Scranton Sch. Dist., 66 F. Supp. 3d 570, 582-84 (M.D. Pa. 2014).

Thus, since plaintiffs have failed to plead a plausible state-created danger claim, the motions to dismiss of CTC and the school districts with respect to Count V of the complaints will be **GRANTED**, and these claims will be **DISMISSED WITH PREJUDICE** since, based on the above discussion, the

court finds it would be futile to allow an amendment of these claims.

## IV.    CONCLUSION

For the above stated reasons the motions to dismiss of CTC and the school districts will be **GRANTED IN PART**, and **DENIED IN PART**. Specifically, the motions to dismiss of CTC and the school districts with respect to the Title IX claims in Count I of the complaints will be **DENIED**. The motions to dismiss of CTC and the school districts with respect to Count II of the complaints will be **GRANTED**, and the Title IX claims in Count II will be **DISMISSED WITH PREJUDICE**. The motions to dismiss of CTC and the school districts with respect to Count III of the complaints will be **GRANTED**, and the Title IX retaliation claims in Count III will be **DISMISSED WITH PREJUDICE**. The motions to dismiss of CTC and the school districts with respect to Count IV, 14th Amendment due process claims, and Count VI, failure to train and supervise claims, will be **DENIED**. The motions to dismiss of CTC and the school districts with respect to Count V of the complaints will be **GRANTED**, and the state-created danger claims in Count V will be **DISMISSED WITH PREJUDICE**.

An appropriate Order pertaining all of the pending motions in the eight cases shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: November 4, 2019**

19-1146-01 all.wpd

64