**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| B.W., | : |
| | : |
| Plaintiff | CIVIL ACTION NO. 3:19-1146 |
| | : |
| v | |
| | : (JUDGE MANNION) |
| CAREER TECHNOLOGY CENTER OF LACKAWANNA COUNTY and VALLEY VIEW SCHOOL DISTRICT, | : |
| | : |
| Defendants | |

= = = = = = = = = = = = =

| | |
|---|---|
| R.P., | : |
| | : |
| Plaintiff | CIVIL ACTION NO. 3:19-1147 |
| | : |
| v | |
| | : (JUDGE MANNION) |
| CAREER TECHNOLOGY CENTER OF LACKAWANNA COUNTY and VALLEY VIEW SCHOOL DISTRICT, | : |
| | : |
| Defendants | |

= = = = = = = = = = = = =

| | |
|---|---|
| M.W. and T.W., as parents and natural guardians of M.W., | : |
| | : |
| Plaintiffs | CIVIL ACTION NO. 3:19-1148 |
| | : |
| v | |
| | : (JUDGE MANNION) |
| CAREER TECHNOLOGY CENTER OF LACKAWANNA COUNTY and LAKELAND SCHOOL DISTRICT, | : |
| | : |
| Defendants | |

======================

| | |
|---|---|
| J.K., | : |
| | : |
| Plaintiff | CIVIL ACTION NO. 3:19-1149 |
| | : |
| v | : |
| | : (JUDGE MANNION) |
| CAREER TECHNOLOGY CENTER OF LACKAWANNA COUNTY and MID VALLEY SCHOOL DISTRICT, | : |
| | : |
| Defendants | |

======================

| | |
|---|---|
| J.R., a minor, by his parents and natural guardians, S.M. & J.R., | : |
| | : |
| Plaintiffs | CIVIL ACTION NO. 3:19-1150 |
| | : |
| v | : |
| | : (JUDGE MANNION) |
| CAREER TECHNOLOGY CENTER OF LACKAWANNA COUNTY and LAKELAND SCHOOL DISTRICT, | : |
| | : |
| Defendants | |

======================

| | |
|---|---|
| R.P. a minor, by his parent and natural guardian, D.P., | : |
| | : |
| Plaintiff | CIVIL ACTION NO. 3:19-1153 |
| | : |
| v | : |
| | : (JUDGE MANNION) |
| CAREER TECHNOLOGY CENTER OF LACKAWANNA COUNTY and SCRANTON SCHOOL DISTRICT, | : |
| | : |
| Defendants | |

= = = = = = = = = = = = =

| | |
|---|---|
| **M.W. as parent and natural guardian of S.W., a minor,** : | |
| : | |
| **Plaintiffs** : | **CIVIL ACTION NO. 3:19-1154** |
| : | |
| **v** : | |
| : | **(JUDGE MANNION)** |
| **CAREER TECHNOLOGY CENTER OF LACKAWANNA COUNTY and LAKELAND SCHOOL DISTRICT,** : | |
| : | |
| **Defendants** | |

= = = = = = = = = = = = =

| | |
|---|---|
| **E.P.,** : | |
| : | |
| **Plaintiff** : | **CIVIL ACTION NO. 3:19-1155** |
| : | |
| **v** : | |
| : | **(JUDGE MANNION)** |
| **CAREER TECHNOLOGY CENTER OF LACKAWANNA COUNTY and LAKELAND SCHOOL DISTRICT,** : | |
| : | |
| **Defendants** | |

## M E M O R A N D U M

On November 4, 2019, the court issued a Memorandum and Order,[1]

---

[1]The Memorandum and Order involved eight substantially similar cases arising out of alleged pervasive sexual abuse and harassment of minor male public school students, from four school districts, by one of their teachers while they were taking classes at the Lackawanna County Career Technology Center ("CTC"). The related eight cases are Civil Nos. 19-1146, 19-1147, 19-1148, 19-1149, 19-1150, 19-1153, 19-1154, and 19-1155.

(continued...)

3

(Docs. 19 & 20), in which it found as follows:

> the motions to dismiss of CTC and the school districts will be **GRANTED IN PART**, and **DENIED IN PART**. Specifically, the motions to dismiss of CTC and the school districts with respect to the Title IX claims in Count I of the complaints will be **DENIED**. The motions to dismiss of CTC and the school districts with respect to Count II of the complaints will be **GRANTED**, and the Title IX claims in Count II will be **DISMISSED WITH PREJUDICE**. The motions to dismiss of CTC and the school districts with respect to Count III of the complaints will be **GRANTED**, and the Title IX retaliation claims in Count III will be **DISMISSED WITH PREJUDICE**. The motions to dismiss of CTC and the school districts with respect to Count IV, 14th Amendment due process claims, and Count VI, failure to train and supervise claims, will be **DENIED**. The motions to dismiss of CTC and the school districts with respect to Count V of the complaints will be **GRANTED**, and the state-created danger claims in Count V will be **DISMISSED WITH PREJUDICE**.

The court specifically found it would be futile to allow an amendment of all of the plaintiffs' claims in Counts II, III and V. (citing Alston v. Parker, 363 F.3d 229, 236 (3d Cir. 2004) ("Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility.")).

Presently pending before the court is the November 18, 2019 joint motion of the plaintiffs for reconsideration, pursuant to Fed.R.Civ.P. 59(e), of the court's November 4, 2019 Order, (Doc. 20), pertaining only to the dismissal with prejudice of their Count III retaliation claims under Title IX of the Educational Amendments of 1972, 20 U.S.C. §1681, *et seq.* (hereinafter "Title IX"). The motion has been fully briefed. After reviewing the filings, as

---

[1](...continued)
Since the court stated the procedural and factual backgrounds of these cases in its November 4, 2019 Memorandum, they will not be repeated.

4

well as the record, the court will **GRANT IN PART**, and **DENY IN PART** plaintiffs' joint motion for reconsideration.[2] The Title IX retaliation claims in Count III of the complaints of B.W., 19-1146, and J.R., 19-1150, will be **REINSTATED** only as to defendant CTC. The Title IX retaliation claims in Count III of the complaints of the other six plaintiffs will remain **DISMISSED WITH PREJUDICE**.

I. **LEGAL STANDARD**

Rule 59(e) provides the procedural mechanism for altering or amending a judgment that has been entered. It may be used to seek remediation for manifest errors of law or fact or to present newly discovered evidence which, if discovered previously, might have affected the court's decision. Schumann v. Astrazeneca Pharmaceuticals, L.P., 769 F.3d 837, 848 (3d Cir. 2014) (citing Max's Seafood Café v. Quineros, 176 F.3d 669, 677 (3d Cir. 1999)); Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985). A party seeking reconsideration must demonstrate at least one of the following grounds prior to the court altering, or amending, a standing judgment: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. Lazaridis v. Wehmer, 591

---

[2]The relevant pending joint motion for reconsideration in the cases are docketed as follows: Doc. 21, 19-1146; Doc. 20, 19-1147; Doc. 28, 19-1148; Doc. 29, 19-1149; Doc. 30, 19-1150; Doc. 32, 19-1153; Doc. 27, 19-1154; and Doc. 29, 19-1155.

5

F.3d 666, 669 (3d Cir. 2010); Max's Seafood Café, 176 F.3d at 677 (citing North River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995)). However, "[b]ecause federal courts have a strong interest in the finality of judgments, motions for reconsideration should be granted sparingly." Continental Casualty Co. v. Diversified Indus. Inc., 884 F. Supp. 937, 943 (E.D. Pa. 1995).

Reconsideration is generally appropriate in instances where the court has "misunderstood a party, or has made a decision outside the adversarial issues presented to the [c]ourt by the parties, or has made an error not of reasoning, but of apprehension." York Int'l Corp. v. Liberty Mut. Ins. Co., 140 F. Supp. 3d 357, 360–61 (3d Cir. 2015) (quoting Rohrbach v. AT & T Nassau Metals Corp., 902 F. Supp. 523, 527 (M.D. Pa. 1995)). It may not be used as a means to reargue unsuccessful theories that were presented to the court in the context of the matter previously decided "or as an attempt to relitigate a point of disagreement between the [c]ourt and the litigant." Id. at 361 (quoting Ogden v. Keystone Residence, 226 F. Supp. 2d 588, 606 (M.D. Pa. 2002)). Thus, "a motion for reconsideration may not be used to give a litigant a 'second bite at the apple,' and therefore should not be 'grounded on a request that a court rethink a decision already made.'" Jarzyna v. Home Properties, L.P., 185 F.Supp.3d 612, 622 (E.D.Pa. 2016) (internal citations omitted). As such, "a motion for reconsideration may address 'only factual and legal matters that the Court may have overlooked' and may not 'ask the Court to rethink what it had already thought through—rightly or wrongly.'" *Id*. (citations

6

omitted). Further, "[m]ere 'disagreement with the Court's decision' does not suffice." Rich v. State, 294 F.Supp.3d 266, 273 (D.N.J. 2018) (citation omitted).

## II. DISCUSSION

Plaintiffs request the court to reconsider the dismissal with prejudice of their Title IX retaliation claims in order to prevent a clear error of law or fact, and to prevent manifest injustice. They seek the court to reinstate their retaliation claims under Title IX, or, alternatively, ask the court to hold its dismissal of these claims in abeyance to allow the parties to conduct further discovery with regard to the alleged retaliation. Plaintiffs also request reconsideration with respect to plaintiff J.R. (Civil No. 19-1150) and plaintiff B.W. (Civil No. 19-1146), since they contend that J.R.'s and B.W.'s complaints specifically plead additional retaliatory facts unique to these two students.

"To survive a motion to dismiss on a Title IX claim, 'it is true that [a] plaintiff does not need to provide detailed factual support for its allegations ... [but] the plaintiff's allegations must amount to more than mere conclusory allegations.'" Colombo v. Bd. of Educ. for Clifton Sch. Dist., 2017 WL 4882485, at *10 (D.N.J. Oct. 29, 2017) (citation omitted).

As the court stated in its prior Memorandum:

In Count III, plaintiffs basically allege that CTC and the school districts failed to offer the plaintiff students any type of remedial measures or provide, offer, recommend, or coordinate adequate

7

health, psychological, counseling, or academic assistance and services to the plaintiff students who were abused and harassed by Humphrey, and that they deliberately and recklessly chose not to do so in retaliation of the plaintiff students' involvement in the sexual abuse scandal by reporting the sexual abuse by Humphrey and cooperating with the law enforcement authorities. (Doc. 1-1, ¶'s 81-88, 19-1154).

It is also alleged that after Humphrey was arrested on May 30, 2017, "[CTC], by and through its employee, Robert Hudak, an instructional aide or paraprofessional in the automotive technology class, addressed the class in the days after Mr. Humphrey's arrest and accused minor students, including [plaintiffs], of being liars and attempting to ruin Mr. Humphrey's reputation, allegedly stating that he hoped they all get what they have coming to them." (Doc. 1-1, ¶86, 19-1154).

Further, it is alleged that "[plaintiffs] suffered additional and often daily materially adverse actions and retaliation levied against [them] by agents, employees, supervisors, administrators and principals of Defendants by being called to the principals office and reprimanded for trivial issues that no other non-sexually abused student was disciplined." (Id., ¶87, 19-1154).

"Although the statute does not specifically mention retaliation, it is settled that retaliatory conduct is within the broad prohibition of 'discrimination' made unlawful by Title IX." S.K. v. North Allegheny School District, 168 F.Supp.3d at 803 (citing Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 173-74, 125 S.Ct. 1497 (2005)). No doubt that "retaliation taken against an individual because that individual has complained about sex discrimination is a covered form of discrimination under Title IX." Id. at 805 (citing Jackson, 544 U.S. at 173). "Thus, to assert a viable claim for retaliation under Title IX, Plaintiff[s] must plead facts sufficient to plausibly show that [defendants] "retaliated against [them] because [they] complained of sex [abuse and

8

harassment]." <u>Frazer v. Temple University</u>, 25 F.Supp.3d 598, 615 (E.D.Pa. 2014) (citing <u>Jackson</u>, 544 U.S. at 184).

Specifically, "[t]o establish a prima facie case of retaliation, a plaintiff must show: (1) that he or she engaged in protected activity [under Title IX]; (2) defendant had knowledge of the protected activity; (3) adverse school-related action was taken against plaintiff; and (4) a causal connection between the protected activity and the adverse action." <u>S.K. v. North Allegheny School District</u>, 168 F.Supp.3d at 803-04 (citing <u>Yan v. Penn State University</u>, 529 Fed.Appx. 167, 171 (3d Cir. 2013)). Further, plaintiff must show "intentional conduct ... to recover on a claim of retaliation." <u>Id</u>. at 805. "The first step in any assessment of a retaliation claim is to identify what conduct, if any, a reasonable jury could causally link to the existence of retaliatory animus." <u>Id</u>. at 806 (citations omitted). Retaliatory animus is "(1) intentional conduct aimed at inflicting injury or harm (2) taken because of a complaint about a perceived form of prohibited conduct." <u>Id</u>. "Protected activities include complaints of sexual discrimination to the courts, government agencies, or the funding recipient." <u>Dawn L. v. Greater Johnstown School Dist.</u>, 586 F.Supp.2d 332, 374 (W.D.Pa. 2008) (citations omitted). "To establish the requisite causal connection, Plaintiff must allege facts to demonstrate either: '(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link.'" <u>Frazer</u>, 25 F.Supp.3d at 615 (citing <u>Cooper v. Menges</u>, 541 Fed.Appx. 228, 232 (3d

Cir. 2013)).

In its November 4, 2019 decision, the court found that plaintiffs' allegations met the first and second elements of a Title IX retaliation claim, but they did not meet the last two elements. The court held that "the complaint[s] do[] not allege specific action taken by the [defendants] that can be found to be 'materially adverse' within the meaning of Title IX's prohibition against retaliation." S.K. v. North Allegheny School District, 168 F.Supp.3d at 804. "To satisfy this requirement plaintiff must identify action that is adverse to a degree that it 'might well have dissuaded a reasonable [person] from making or supporting a charge of [or complaint about] discrimination.'" Id. (quoting Burlington Northern & Santa Fe Ry. v. White, 548 U.S. 53, 68, 126 S.Ct. 2405 (2006)); accord Dawn L. v. Greater Johnstown School Dist., 586 F.Supp.2d 332, 374 (W.D.Pa. 2008) ("Applying Title VII jurisprudence to Title IX retaliation claim and recognizing that to qualify as materially adverse, retaliation must be such that it would dissuade a reasonable person from making or supporting a report of alleged harassment.")).

The court now reconsiders its dismissal of the plaintiffs' Title IX retaliation claims.

Initially, there are no specific allegations that any of the four defendant school districts[3] had any direct involvement with respect to plaintiffs' Title IX retaliation claims.

---

[3]The four defendant school districts are Valley View, Lakeland, Mid Valley, and Scranton.

In particular, the complaints allege as follows:

> Instead of providing appropriate support for the abuse [they] suffered, Plaintiff[s], upon [their] return to Defendant CTC after what had occurred, [were] singled out for [their] part in the scandal by the staff of Defendant CTC, as a result of direct retaliation by Defendant CTC for the reporting of abuse by Richard Humphrey and cooperating with law enforcement authorities.

The complaints also allege:

> [Plaintiffs] suffered additional and often daily materially adverse actions and retaliation levied against [them] by teachers, agents, employees, supervisors, and administrators Defendant CTC by being reprimanded for trivial issues that no other non-sexually abused student was called out for.

(Doc. 1-2, ¶'s 49-50, 19-1150).

As defendants Mid Valley and Lakeland School Districts points out:

> Plaintiffs' argument [in support of reconsideration] ignores the fact that the only specific allegation in the Complaint regarding Plaintiffs' claim of retaliation references an employee of CTC, not the District. See Doc. 1,Exhibit A, ¶84. There are no facts alleging the District specifically took any adverse action against Plaintiffs. Furthermore, Plaintiffs do not argue that the District took any retaliatory actions. Instead, the focus of their argument is on CTC. In addition to the actions of Hudak (a CTC employee), they argue that the Students were subjected to retaliation by CTC and its employees. (See Plaintiff's Brief, at 9). Plaintiffs fail to make any argument to support a retaliation claim against the District.

(Doc. 35, Civil No. 19-1148).

The court finds that the complaints do not specifically allege that any of the defendant school districts took any adverse school-related action against the plaintiffs. Rather, the alleged described retaliatory actions were taken only by CTC and its staff and officials. Nor is it alleged that any of the defendant

11

school districts were aware of, condoned or acquiesced in the adverse actions CTC took towards the plaintiffs. Despite being minor students at the time, plaintiffs themselves would certainly have been aware of any such adverse actions their school districts took against them after they reported the abuse by Humphrey.

Thus, plaintiffs failed to state cognizable Title IX retaliation claims against any of the four defendant school districts and, the court finds no error in the dismissal with prejudice of these claims as against the school districts. *See* Williams v. Pennridge School District, 2016 WL 6432906, *5 (E.D.Pa. Oct. 31, 2016) ("[T]he Third Circuit has clarified that intentional discrimination for an actionable [] Title IX claim may be demonstrated through a showing of deliberate indifference", and "to establish deliberate indifference, 'a plaintiff must show that the school district had knowledge of the alleged misconduct and the power to correct it but nonetheless failed to do so.'") (internal citations omitted).

Next, plaintiffs turn to their allegations about being reprimanded by CTC's staff and officials for trivial issues. In its November 5, 2019 Memorandum, the court stated as follows:

> Being called into the principals office and being reprimanded for trivial matters is not sufficiently materially adverse with respect to a Title IX retaliation claim in the context alleged in this case based on the alleged retaliatory act. "Mere 'petty slights or minor annoyances' are not, therefore, material." Dawn L. v. Greater Johnstown School Dist., 586 F.Supp.2d at 374 (citations omitted).

12

Moreover, "[t]he assessment of whether particular conduct or action can be found to be retaliatory is to be undertaken with particular attention to the attendant and surrounding circumstances", and "[t]he examination is focused on the alleged retaliatory action and not the conduct that brought about the original claim of discrimination." S.K. v. North Allegheny School District, 168 F.Supp.3d at 804 (internal citations omitted). "[A] material adverse action is one that 'produces injury or harm'", and "[t]he standard for judging whether an identified act or course of conduct is capable of producing injury or harm is an objective one." Id. (internal citations omitted). In this regard, "'[c]ontext matters.'" Id.(citation omitted). "It is plaintiff's burden to make a plausible showing that the identified action intentionally was implemented to cause harm or injury because complaints were made about sexual discrimination." Id. at 806 (citation omitted).

The court will not rehash its reasoning regarding its finding as to why plaintiffs' allegations that CTC's staff and officials reprimanded them for trivial issues failed to plausibly state cognizable Title IX retaliation claims. In short, retaliatory harassment is actionable only if it "well might have dissuaded a reasonable [person] from making or supporting a charge of [sexual abuse]." Williams, 2016 WL 6432906, *10 (citations omitted). The stated allegations of harassment, viewed in the light most favorable to plaintiffs, "do not rise to the level of material adversity because they would not dissuade a reasonable person from making a complaint of [sexual abuse]." Id. at *11. Also, the complaints "fail[] to adequately allege a basis on which to attribute this supposed [] harassment [by CTC's staff and officials for trivial issues] to Defendant[] [school districts]." Id.

To the extent plaintiffs now ask the court to permit them discovery to flesh out their allegations with respect to their Title IX retaliation claims, as

13

defendants point out, plaintiffs had the opportunity to re-plead their insufficient claims after defendants filed their motions to dismiss in July of 2019, but "they failed to seize the opportunity [even] after defendants' motions highlighted th[e] deficiencies."

With respect to the allegations about Hudak addressing the automotive class at CTC after Humphrey's arrest, plaintiffs state that they should be allowed to conduct discovery to develop what school officials knew before, during or after the time that Hudak confronted the students, and whether his conduct was condoned by school officials.

The court stated in its November 4, 2019 Memorandum as follows:

> As in the case of S.K. v. North Allegheny School District, 168 F.Supp.3d at 807, "[p]laintiff[s] ha[ve] failed to supply the factual averments and context that will permit an inference that defendant[s] harbored retaliatory animus and acted on it by engineering a particular course of additional [teacher]-based [sexual abuse and] harassment." The isolated alleged comments by a teacher's aide [Hudak] are not sufficient to show that defendants had a retaliatory animus towards plaintiffs and the other student victims, especially since it is not alleged that any of defendants' officials were even aware of the aide's comments or condoned them.

The court again finds that plaintiffs' allegations about Hudak are insufficient to plausibly state a Title IX retaliation claim and that it is futile to allow discovery regarding these allegations. It is not alleged that Hudak addressed and accused only plaintiffs in the automotive class. Rather, it is alleged that Hudak addressed the entire class, which included plaintiffs. It is not alleged that the plaintiffs were singled out by Hudak, and it is not alleged that Hudak targeted any of the plaintiffs due to their complaints about

14

Humphrey. Further, Hudak is not even alleged to be a teacher or to have held any supervisory position or position of any authority at CTC. In fact, it is alleged that Hudak was only a teacher's aide or "paraprofessional" and, it is not alleged that he could speak on behalf of CTC or any of the defendant school districts. Nor is it alleged that Hudak had any authority to discipline or impose any type of sanctions on any student in the class, including plaintiffs. It is not even alleged that Hudak made any specific retaliatory comment to any student in the class, including plaintiffs. Rather, it is only alleged that Hudak told the class "he hopes that they **all** 'get what they have coming to them.'" (*See* Doc. 1-2, ¶47, Civil No. 19-1150) (emphasis added). Further, it is not alleged that after his comments to the class, Hudak actually took or attempted to take any adverse retaliatory actions against any of the plaintiffs because of their complaints about Humphrey. Thus, while Hudak's alleged comments were certainly ill-advised, they simply cannot be a basis for plaintiffs' Title IX retaliation claims.

Finally, plaintiffs state that even if the court declines to grant their motion for reconsideration regarding all of the plaintiffs, plaintiffs J.R. and B.W. should be allowed to proceed on their Title IX retaliation claims since they alleged additional facts not contained in the other complaints. Plaintiffs contend that the court's prior decision "did not specifically discuss the separate and distinct allegations made by plaintiff J.R. [19-1150] and plaintiff B.W. [19-1146] regarding additional, separate retaliatory conduct against them individually during their time at Defendant CTC in direct retaliation for

their respective roles in reporting Humphrey's behavior."

With respect to J.R., plaintiffs state:

The Complaint of Plaintiff J.R. sets forth two specific acts of retaliation unique to him. First, he was forced to ultimately graduate early because of various run-ins with the new Automotive Technology class instructor and other staff members, as a result of direct retaliation by Defendant CTC for the reporting of abuse by Richard Humphrey. (See J.R. Complaint, No. 3:19-CV 01150-MEM, Doc. 1-2, ¶51). Second, at the conclusion of the 2018-2019 school year, Plaintiff J.R. was told [by CTC] he was not eligible to attend the final award night ceremony because it was not a graduation ceremony and he would not be receiving any awards when, in fact, there was a graduation ceremony that Plaintiff J.R. missed where his name was called to recognize his graduation, but he was absent for it, as a result of direct retaliation by Defendant CTC for the reporting of abuse by Richard Humphrey. Id. at ¶52.

As to B.W., plaintiffs state:

The Complaint of Plaintiff B.W. includes that he was actively and continuously bullied and retaliated against by George Pelepko-Filak, CTC's Assistant Director, in front of other students and teachers during his time at CTC after Humphrey's arrest. This conduct included Pelepko-Filak: threatening to expel B.W. because he put his feet up on a desk; for no valid reason, refusing to approve B.W.'s participating in a prestigious Co-Op program during the 2017-2018 school year, through which B.W. would have gained invaluable field experience in automotive mechanics/repair and potentially could have made career contacts, even though B.W. had earned the privileges of participating in that coveted program through his grades, attendance record and teacher recommendations; threatening to kick B.W. out of the Co-Op program during the 2018-2019 school year, which B.W. had again earned the right to participate in, if he heard a single negative thing about B.W.'s performance; refusing to grant B.W., who was cooperating with law enforcement, the same lunch privileges he granted to other CTC students; for no valid reason, taking away B.W.'s "live privileges" that allowed him to work on his own vehicles in the CTC shop while affording similar privileges to other students who had not been victimized by Humphrey or involved in the police investigation; and threatening to not allow B.W. to walk for graduation ceremonies

16

[at CTC] along with his other classmates, telling B.W. that he would instead mail his diploma and "maybe it will get there, maybe it won't." (See B.W. Complaint, No. 3:19-cv-01146 Doc. No. 2, ¶¶46-48, 85, 86).

Upon closer examination, the court finds that the more detailed Title IX retaliation claims of plaintiffs J.R. and B.W. should be reinstated and be allowed to proceed to discovery, but only as against CTC and not their respective school districts, namely Lakeland for J.R. and Valley View for B.W. As discussed above regarding all of the Title IX retaliation claims against the school districts, the additional specific allegations of plaintiffs J.R. and B.W. regarding their retaliation claims only pertain to CTC, its staff and, its officials. Thus, the dismissal with prejudice of the Title IX retaliation claims of all the plaintiffs, including J.R. and B.W., to the extent that they are asserted against the defendant school districts, shall not be disturbed.

### III. CONCLUSION

For the above stated reasons, the joint motion for reconsideration of the plaintiffs with respect to their Title IX retaliation claims in Count III of their complaints will be **GRANTED IN PART**, and **DENIED IN PART**. The motion will be **GRANTED** as to the Title IX retaliation claims in Count III of the complaints of B.W., 19-1146, and J.R., 19-1150, only as against defendant CTC. The motion will be **DENIED** as to the Title IX retaliation claims in Count III of the complaints of the other six plaintiffs. An appropriate Order pertaining to the pending motion in the eight cases shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

Date: December 17, 2019<sub>19-1146-02 all.wpd</sub>